## HAMMATT vs. SAWYER.

A mortgagee is not *tenant in common* with his mortgagor within the meaning of *stat.* of 1821, *ch.* 35, which subjects such tenant to the payment of treble damages, for cutting wood, timber, &c. on the common land without giving forty days previous notice to his co-tenant.

And where one is mortgagee of the share of one who was tenant in common with others, not being in possession, and having made no entry to foreclose the mortgage, he is not a *tenant in common,* within the meaning of said statute, and entitled to his action for treble damages against the other owners, for cutting without giving him the statute notice.

THIS was an action of trespass, commenced by the plaintiff, as well for himself as for the other co-tenants under the provisions of the Act of 1821, *ch.* 35, entitled " an Act to prevent tenants in common, joint tenants, and copartners from committing waste, and for other purposes." The case was submitted for the opinion of the Court, upon the following agreed statement of facts.

Previous to *January* 17, 1833, *Hammatt,* the plaintiff, was the owner of *Mollinocket* township, upon which the trespass was alleged to have been committed. On that day he conveyed one half of said township in common and undivided, to *Waldo Pierce* and *Robert Treat,* who on the same day mortgaged the same to *Hammatt,* to secure the payment of the purchase money. This mortgage was paid and discharged *May* 1, 1833. On the same 17th day of *January, Hammatt* conveyed one fourth of said township to *Hazen Mitchell,* and one fourth to *Elihu Baxter,* in common and undivided, taking from each of them a mortgage of his fourth to secure the payment of the purchase money. The mortgage given by *Mitchell,* was discharged on the 29th of *April,* 1833 — and on the *Baxter* mortgage all that was due had been paid, leaving about $4000 unpaid. *Pierce, Treat, Mitchell* and *Baxter,* previous to the commencement of this suit, and previous to the time of the alleged trespass, had conveyed all their interest in said township to the defendant and *Josiah S. Little,* by deeds of warranty, the defendant receiving title to seven eighths and *Little* to one eighth. After which, and before the time of the alleged trespass, the defendant had conveyed one eighth to *Daniel Chamberlain,* and one eighth to *Eleazer Crabtree,* in common and undivided, who still owned.

Hammatt v. Sawyer.

The timber, it was agreed, was all cut under the direction of the defendant, by the consent and for the benefit of all the persons interested in the township except *Hammatt*, and without the statute notice to him. Said township, it was agreed, was in a wild uncultivated state, no persons residing upon it.

If, upon these facts, the Court should be of opinion that the action could be maintained, judgment was to be rendered for the plaintiff, for such damages as should be found upon evidence, otherwise judgment was to be rendered for the defendant for his costs.

*Rogers*, argued for the plaintiff, insisting that these parties were tenants in common, within the meaning of the *stat.* of 1821, *ch.* 36, and consequently that the action was well maintained. He also cited the following authorities ; *Blaney* v. *Bearce*, 2 *Greenl.* 132 ; *Smith* v. *Goodwin*, 2 *Greenl.* 173 ; *Stowell* v. *Pike*, 2 *Greenl.* 387.

*F. Allen and W. P. Fessenden*, for the defendant, cited the following authorities : *Willington* v. *Gale*, 7 *Mass.* 138 ; *Cro. Chas.* 806 ; 1 *Rolle*, 859 ; 2 *Rolle*, 242 ; 2 *Cruise's Dig.* 106, 107 ; 8 *Mass.* 566. *(supplement;) Stearns on Real Actions*, 256 ; 2 *Cruise's Dig.* 549 ; *Rising* v. *Stannard*, 17 *Mass.* 282 ; *Goodwin* v. *Richardson*, 11 *Mass.* 469 ; *Potter* v. *Wheeler*, 13 *Mass.* 504 ; *Keay* v. *Goodwin*, 16 *Mass.* 1 ; *Stowell* v. *Pike*, 2 *Greenl.* 387 ;

PARRIS J. at a subsequent term, delivered the opinion of the Court.

This is an action of trespass, commenced by the plaintiff, claiming to be a tenant in common with the defendant and others in a township of wild and uncultivated land, to recover a penalty claimed under the provisions of statute of 1821, *chap.* 35, to prevent tenants in common, joint-tenants and coparceners from committing waste. The ground of defence is, that at the time of the cutting the trees mentioned in the plaintiff's writ, he was not a tenant in common with the defendant, and, therefore, not entitled to the notice required by the second section of the statute, nor to

maintain this action for the penalty. *Hammatt* had no other interest in the township but as mortgagee of one undivided fourth part, the same having been mortgaged to him by *Baxter.* He had not taken actual possession under his mortgage, and there had been no breach of the condition.

*Sawyer* and others, having purchased *Baxter's* interest in the township, stood in the situation of mortgagors of the quarter to *Hammatt.* . Between mortgagor and mortgagee there are no relations of a tenancy in common. It is not even contended in support of the action, that *Sawyer*, as mortgagor, would be liable to the statute penalty for cutting timber on the mortgaged premises. The mortgagee has another remedy in such case. As between them, the mortgagee is considered as seised of the legal estate, even while the mortgaged premises remain in the possession of the mortgagor ; and this court has decided, that for cutting and carrying away timber from the mortgaged premises by the mortgagor, the mortgagee has a remedy by action of trespass *quare clausum.* *Stowell* v. *Pike*, 2 *Greenl*, 387. If there be a tenancy in common between the plaintiff and defendant, it must grow out of some interest in the latter other than as assignee of *Baxter.*

But *Sawyer* and others, not parties to the suit, were owners of the other undivided three fourths of the township, in fee, and consequently were tenants in common with the owner of the other undivided fourth, mortgaged to *Hammatt.* Was *Hammatt*, as mortgagee tenant in common with them ?

In examining this question, we are to consider *Sawyer* in his character as owner of the three fourths, without being at all affected by his interest in the other fourth, — and that *Hammatt* cannot bring to his aid, in support of his claim to be tenant in common with *Sawyer*, as owner of the three fourths, any principles of law applicable to him as the assignee of *Baxter*, or as mortgagor of the one fourth. So far as it regards *Sawyer*, they are entirely distinct concerns, and *Hammatt* holds no other relations to him as owner of the three fourths than he would have held if *Sawyer* had never purchased of *Baxter*. The charge is

not against *Sawyer*, as mortgagor or claiming under the mortgage, or as a stranger, but as tenant in common. As mortgagor, he is not such. As owner in fee of the three fourths, he is, but not with *Hammatt*, unless *he* became such as mortgagee.

It is a settled principle of law, that as between the mortgagor and mortgagee, the fee of the estate passes to the mortgagee, at the execution of the deed ; but as between the mortgagor and other persons he is considered as still having the legal estate in himself. A mortgagee has but a chattel interest, the freehold remains in the mortgagor. *Lane* v. *Shears*, 1 *Wend.* 437.

The mortgagor, notwithstanding the mortgage, is deemed seised. The mortgage is a mere incident to the bond, and a discharge of the bond will relieve the property from the incumbrance. *Wilson* v. *Troup.* 2 *Cowen*, 230 ; *Hatch* v. *White*, 2 *Gallison*, 155 ; *Vose* v. *Handy*, 2 *Greenl.* 322. *Chancellor Kent* says, the conclusion to be drawn from a view of the English and American authorities, is that the mortgagee before entry, notwithstanding the form of the conveyance has only a chattel interest, and his mortgage is a mere security for a debt, while the interest of the mortgagor is descendible by inheritance, devisable by will, and alienable by deed. 4 *Kent's Comm.* 153. In *Goodwin* v. *Richardson*, 11 *Mass.* 469, *Jackson J.* says, " the mortgagee can never become the owner of the land unless he elects to be so, and makes a formal entry for the condition broken. It is true that the mortgage deed purports to convey to the mortgagee a present estate in fee simple, defeasible on the performance of a certain condition by the mortgagor. But according to the construction of the instrument, which has been long settled in our courts, and which is warranted by the statutes relating to the subject, the mortgagee, instead of having an estate in the land, defeasible on performance of a condition subsequent, has the right of acquiring an estate on a certain contingency, and on the performance of a condition precedent on his part. But he has only a lien on the land, and not any estate in it, strictly speaking, until he actually takes the land in legal form, towards the discharge of his debt.

The mortgagor is a freeholder, so long as he remains in possession, and if an entry should be made on him or he be disseised by a stranger, he may maintain trespass or a writ of entry. *Groton* v. *Boxborough*, 6 *Mass.* 53. But it may be questionable, whether the mortgagee, not having been in actual possession, nor elected whether to hold the land, or rely on his personal security, can maintain trespass against a stranger. This principle seems to be recognised in *Hatch* v. *Dwight*, 17 *Mass.* 299, which was an action of trespass on the case for a nuisance in destroying the plaintiff's mill and site by flowing.

The plaintiff sustained her action. Among other points in the case, it became a question when her right of action commenced, she holding the premises injured as mortgagee. Upon this question the court say, " as to damages, we think it was right to limit the plaintiff to the period of her actual possession. Before that it was uncertain whether she would claim to hold the land, or rely upon her personal security for the debt. Although a mortgagee may enter at any time, yet until he enters, the land must be considered as belonging to the mortgagor, who can maintain trespass for any injury done to the freehold against any but the mortgagee."

In the case at bar, the premises being uncultivated, the possession was vacant, but still as it respects all persons, except the mortgagee, the mortgagor was seized and the constructive possession follows the seizin. There had been no breach of the condition in the mortgage, there had been no entry or taking of actual possession by the mortgagee ; no intimation whether he should claim the land or rely upon his personal security. It seems to result from the principles established in the cases above referred to that, as it respects the owners of the three fourths, *Hammatt* could not, as mortgagee, be considered the owner of the remaining fourth, at least, until he had taken possession, or in some manner indicated his intention to hold it, and that, until then, the mortgagor is to be considered as the owner, and to be treated as such by the other co-tenants. See also *Ely* v. *McQuire*, 2 *Hammond*, 234 ; *Gibson* v. *Seymour*, 3 *Vermont Rep.* 565. Viewing *Sawyer*, then, as mortgagor of the one fourth, and he is

not tenant in common with *Hammatt* of that fourth, because none of the relations of a tenancy in common exist between mortgagor and mortgagee.

Viewing him as owner of the three fourths and he is not tenant in common with *Hammatt*, of the whole tract, because, as it regards strangers to the mortgage, and as such *Sawyer* is to be viewed when impleaded as he now is, *Hammatt* has not become the owner of the mortgaged premises.

The case, from its intricacy and involved nature, is not free from difficulty, but as said by *Story J.* when commenting on this statute in *Prescott* v. *Nevers*, 4 *Mason*, 326, the statute is highly penal, and ought not to embrace cases which are not fairly within its terms.

We cannot say that the case presented for our decision, clearly falls within either the letter or spirit of the statute.