DAVID KIMBALL *versus* LEWISTON STEAM MILL CO.

The purchaser of stumpage from a mortgager in possession is liable therefor to the mortgager, when the rights of the mortgagee to the timber severed have been waived or extinguished.

When the mortgagee, as the agent and at the request of the mortgager, undertakes to collect the pay for such stumpage, he thereby ratifies the act of the mortgager in disposing of the timber, and waives his own right to pursue it as mortgagee·of the land on which it grew.

When the mortgagee has received the full amount of the mortgage debt, and assigned the mortgage, making no mention of any right of action on account of what had been previously severed from the realty, his rights thereto have thereby become extinguished; and no legal claim therefor can be subsequently asserted under the mortgage.

ON REPORT.

ASSUMPSIT.

When the testimony was all in, the case was withdrawn from the jury and submitted to the full Court who were to draw such inferences as a jury might, and render such judgment thereon as the legal rights of the parties required.

The case is sufficiently stated in the opinion.

*A. Black*, for the plaintiff, cited Hilliard on Mort., 519; *Baker* v. *Page*, 11 Maine, 381; *Clark* v. *Wills*, 5 Gray, 69; *Brown* v. *Gammon*, 14 Maine, 276; *Winslow* v. *Copeland*, 15 Maine, 276.

*D. Hammons*, for defendants.

1. Bond is out of the case.

2. Kimball's permission to cut conferred no authority. The legal estate was in the mortgagee. He had no more right to diminish the security than a stranger. *Groton* v. *Boxborough*, 6 Mass., 51; *Erskine* v. *Townsend*, 2 Mass., 493; *Fay* v. *Cheney*, 14 Pick., 399; *Fay* v. *Brown*, 3 Pick., 204.

The mortgagees divested Kimball of all right to maintain this action. He could make them account only by redemption.

Lynch became assignee of all the mortgagee's right to the "premises conveyed by the mortgage." At the date of the assignment, but a small portion of the timber sued for was cut, and was part of the mortgaged property, and in October, 1863, Lynch became owner of Kimball's rights and interests in the premises. All the rights of the mortgagees enured to Lynch's benefit.

On the question of damages, the operations were judicious. They enured to the benefit of the lands. The timber cost more than it was worth. All the facts should be considered in fixing the damages.

BARROWS, J. — The plaintiff brings this action of assumpsit to recover of the defendants an amount of money which he says is due him for stumpage of timber, cut on his land in pursuance of an arrangement between the parties in the winter of 1861 – 2.

The condition of the title to the land, on which the timber was cut, is as follows : — Hosea Austin, in consideration of $10,500, by deed dated October 28, 1854, and duly acknowledged and recorded, conveyed to the plaintiff the wild lands in Byron, including the lots on which this timber was cut, and took a mortgage back from him, of the same date, duly acknowledged and recorded, to secure the payment of $8000 of the purchase money. Austin subsequently assigned half his interest in the mortgage, and one-third of the debt thereby secured, being the last instalment, to Freeman Griffiths. After a partial performance the conditions of the mortgage were broken, but the mortgager, the plaintiff here, still remained in possession, and on December 16, 1861, gave a bond to James Wood, the defendant's agent, conditioned for the conveyance to said Wood in that capacity, by good and sufficient deed, of fifteen lots of timber land in the north-west corner of Byron, specifying three lots, the remainder to be selected by Wood within certain limits, and within six months from date of bond, provided Wood should pay $1500 as follows : — $500 April 16, 1862,

and the balance in equal payments in one and two years from that date. It was proved that the defendants during that winter cut and hauled from the three lots thus specified in the bond and other lots in the north-west corner of By-ron, 500 M. of spruce timber and 80 M. of pine, the stump-age of which was worth $1 per M. for the spruce and $5 for the pine. They hauled this timber to Black brook, which they dammed and cleared at a somewhat heavy expense, and the spring of 1862 being a bad one for want of a freshet, the winter operation proved altogether unprofitable, their ex-penditures, without reckoning anything for the stumpage, exceeding the value of the timber as it lay in Androscoggin river, and this the defendants claim to have considered in determining the amount which the plaintiff is entitled to re-cover if they are held liable to him in this action for any-thing.

There is a contradiction between the plaintiff and Wood as to plaintiff's informing Wood of the Austin mortgage at the time when the bond was given, but, however this may be, there seems to be no doubt that Austin himself inform-ed Wood of the existence of the mortgage in November or December, 1861, (the bond was given Dec. 16,) and for-bade his cutting. The timber was cut, however, notwith-standing the mortgagee's prohibition.

At the March term, 1862, Austin and Griffiths got judg-ment against the plaintiff for possession of the whole mort-gaged territory, and in October, 1862, took possession of it under a pluries writ of possession. In June, 1863, at the request of the plaintiff, (and in pursuance of an agreement between them, that Austin should collect this stumpage either in his own name or in plaintiff's, as might be neces-sary, and allow it on such claims against Kimball as Kim-ball might designate,) Austin went to Lewiston and left word at defendant's office that the timber had been taken without a permit from any person who was authorized to give one, — that it had never been paid for, and that he, (Austin,) should claim pay for it of the defendants. But

he never made any further claim, and defendants never paid either him or the mortgager for the stumpage.

They claim to be exonerated from paying the plaintiff in this suit, on the ground that his permission gave them no right to the timber as against the mortgagee, — and because John Lynch, one of the principal stockholders in the defendant corporation, at the suggestion of their agent Wood, has since these transactions acquired the titles, both of the mortgager and mortgagee, to the wild lands in Byron, from a portion of which, as we have seen, this timber was cut. And they offer in evidence a quitclaim deed from the plaintiff to S. C. Gleason and V. D. Kimball, dated September 18, 1863, by which, in consideration of $2000, he conveys all his right, title and interest in and to the land bought of Austin, excepting certain parcels before sold; also a quitclaim deed of the same from said Gleason and Kimball to John Lynch, dated Oct. 2, 1863, and finally an assignment from Austin and Griffiths to said Lynch, under date of Dec. 11, 1863, of their interest in the mortgage and the debt thereby secured, with proof that Lynch paid to Austin the balance of the mortgage debt remaining due when he took the assignment, being something over $2700.

If a conveyance of timber lands transferred to the purchaser all the rights of action which the former owner has on account of growth previously severed from the realty with or without his consent, or if a mortgager in possession has no right in the mortgaged property, the grant of which may be a legitimate consideration for a purchaser's promise, this defence might be sustained.

The case would wear a very different aspect from that which it now presents, if the defendants had fulfilled the conditions of the bond from plaintiff to their agent Wood, so as to be entitled to claim a conveyance of the lots upon which the timber was cut.

But they made none of the payments stipulated for in the bond, — they did not even select the lots to be conveyed as therein provided. They simply cut the timber under the

plaintiff's permission, and paid neither him nor the mortgagee for it. To entitle their position, as bargainees of the lots, to any consideration in this case, it was incumbent upon them to make good the right to a conveyance by performance, or unconditional tender of performance, of their own duties under the bond. *Non constat* but that performance on their part would have enabled the obligor to fulfil his agreement. But, however this may have been, they cannot allege that agreement in defence of this suit, without showing performance, or offer to perform, on their own part. It is scarcely necessary to remark, that this conversation between Wood and the plaintiff, which the defendants offer in evidence, shows nothing of the sort. There must be an actual tender of performance, unless that is waived by the other party, or excused by proof of absolute and complete disability. A mere allegation of readiness to perform is not sufficient. And, indeed, the defendants' counsel claims only that the bond should be laid out of the case, as not affecting the rights of either party.

Conceding this, the naked question is whether the purchaser of stumpage, from a mortgager in possession, can rightfully refuse payment, when the rights of the mortgagee to that which has been severed from the realty have been either waived or extinguished.

In the present case the evidence shows both a waiver and an extinguishment.

Mr. Austin, the mortgagee, undertook to collect the pay for the stumpage, as agent of the plaintiff and at his request, and thereby fully ratified the act of the plaintiff in disposing of the timber, and waived his own right to pursue it as mortgagee of the land on which it grew. The amount, when collected, was to have been appropriated under the direction of the plaintiff, and would have enhanced the value of his existing right of redemption, which was subsequently purchased by Lynch. It is immaterial whether the defendants knew in what capacity Austin claimed. They knew

that a payment to him would discharge them, but they made no such payment.

Now a mortgage is designed simply to secure the payment of a debt, and, as between himself and all third parties, the mortgager is the owner of the estate so long as he remains in possesssion of it, and may lawfully dispose of it or the products of it, subject only to the superior rights of the mortgagee, who may and frequently does waive those rights, if satisfied that his ultimate security is not thereby impaired.

When the mortgagee's rights are thus waived, the title conveyed by the mortgager is as perfect as though no mortgage existed. It is not competent for a purchaser from the mortgager to set up the mortgage against him, when the mortgagee has waived the rights which he alone in all the world could assert.

Moreover, apart from any question of waiver, there was a complete extinguishment of any right of the mortgagee to pursue the proceeds of this sale of timber from the mortgaged premises, when they received the full amount of the balance due on the mortgage and assigned the mortgage to Lynch, making no mention of any right of action on account of what had been previously severed from the realty.

A mortgagee's assignment, while it passes his title to the land as security for the debt, transfers no rent due at the time of the assignment, without express words to that effect, and it is equally powerless to transfer any right of action growing out of any use or appropriation of the products of the land which the mortgager may have previously made.

Touching this idea of the transfer of bygone rents in this mode, Lord TRURO remarks:—(*Salmon* v. *Dean*, 5 Eng. Rep., 107,) "Men are in the habit of conveying estates day by day, conveying the fee. Well, what passes by that? Do the bygone rents in arrear pass by such conveyance? If they do not, what is the rule of law that makes a difference that the conveyance of the mortgage shall transfer bygone

rents, when the conveyance of the whole estate would not do that, but leave them perfectly unaffected?"

The only parties, then, who ever had any right to this stumpage as mortgagee, having received the full amount of the mortgage debt and transferred the mortgage, making no mention of this claim, there is no possibility that any legal claim to the amount due from the defendants can be asserted under the mortgage. By this transaction the right of the mortgagee (had it not been waived) would have been extinguished, and the mortgager would still have remained entitled to recover.

It is hardly necessary to say that it is to the testimony respecting the fair value of the stumpage alone, that we are to look in order to ascertain the amount for which the plaintiff should have judgment. Whether the defendants so conducted their operation as to make it profitable or the reverse, cannot affect the rights of the plaintiff. It is in proof, and there is no contradictory or controlling testimony, that the stumpage of the pine was worth $5 per M. and of the spruce $1.          *Defendants defaulted.*

*Judgment for plaintiff for $900,
and interest from date of writ.*

APPLETON, C. J., KENT, DANFORTH and TAPLEY, JJ., concurred.

WALTON, J., did not sit on account of relationship between him and the plaintiff.