## ELIAS PLIMPTON *vs.* ROBERT H. GARDINER *et al.*

*Special damage must be alleged.*

This was an action for an injury to the plaintiff's mill through the flowing back of water upon it by means of a dam raised by the defendants. The declaration was for the obstruction thus caused to the working of the mill and the consequent loss of profits: *held*, that a loss of rents, obliged to be relinquished by the plaintiff to his lessees, by agreement between them, in consequence of the overflow of the mill, could not be considered as an element of damage because not specially mentioned in the writ.

ON EXCEPTIONS.

CASE, to recover for damage done by the defendants to the plaintiff's mills. The plaintiff had his mills, known as the Hoe and Fork Factories, upon a little stream, known as Purgatory stream, running from Purgatory pond and emptying into the Cobbosseecontee. The defendants had mills and a dam upon the Cobbosseecontee, at Gardiner, fourteen miles from those of the plaintiff.

The declaration contained two counts, alleging substantially that the plaintiff and his predecessors in title had, from time whereof the memory of man runneth not to the contrary, and ought to have, the unobstructed use of Purgatory stream for the running of the mills mentioned; but that the defendants on and prior to, and ever since the first day of April, 1867, to the day of the suing out of the plaintiff's writ, July 2, 1872, did erect and maintain a dam across the Cobbosseecontee, "into which the said Purgatory flows and empties, thereby hindering and obstructing the free course and passage of the Cobbosseecontee stream and of said Purgatory to the Kennebec river, and thereby damming up and raising the waters of the Cobbosseecontee stream above its usual and due height, thus detaining the waters of the said stream, in the ponds and reservoirs adjacent thereto so as to cause said waters to flow back into said Purgatory stream, and into said mills, and upon the wheels and machinery thereto attached and belonging, thereby hindering and obstructing the use of said mills and

machinery, rendering the same of little or no value, and subjecting the plaintiff to great loss and expense by the interruption of the business of said mills, and depriving him of the profits thereof."

In the spring of 1867 the defendants had placed flush-boards upon their dam which raised it about fifteen inches, and it remained at that elevation for two years. In 1867 and 1868, at high stages of the water, the plaintiff's mill was flowed and he attributed it to this raising of the defendant's dam and brought this suit for the damage thereby caused.

There was much evidence to show that this was the cause of the overflow, and several experts and others to the contrary, holding that it could not so affect the streams for such a long distance. A prior action was brought for this injury but failed because the executors of the late R. H. Gardiner's estate were sued in that capacity. *Plimpton* v. *Richards*, 59 Maine, 115, where the court say that case for a tort does not lie against executors as such.

The second count in the declaration was this :

"Also, for that the said plaintiff on the said first day of April, A. D. 1867, and for a long time before, and from thence hitherto, was seized and possessed of certain mills, mill-dam and water privilege on Purgatory stream, so called, in Litchfield, in said county of Kennebec, and had a right to the free use and flow of the water in said Purgatory stream, and the right to maintain a dam across said stream for the raising of a head of water, and for the purpose of driving his said mills and machinery without any hindrance or molestation.

And the plaintiff avers that the defendants, on the said first day of April, A. D. 1867, and before that time, without any lawful right, authority or permission, had erected, built and maintained a certain structure called flush-boards upon and across a certain dam, called dam number one, or reservoir dam, situate in Gardider aforesaid, over and across the Cobbosseecontee stream, so called, into which the said Purgatory stream runs and empties, and had also filled up certain sluices, and stopped up the wasteways in said dam, thereby raising the waters of the said Cobbos-

seecontee stream above their usual height and level, to wit, twen-
ty-one inches higher than they were accustomed to be raised, and
so much higher than said defendants, or any other person, had
any right or authority to raise said stream, and thus maintained
and continued said structure during all the time complained of
in this writ; by means of which the said Cobbosseecontee stream
became full and flowed back into said Purgatory stream, and into
said mills of the plaintiff, thereby causing back water, and over-
flowing the wheels and machinery of said mill; whereby the same
were hindered and obstructed so that the plaintiff for a long time,
to wit, from said first day of April, A. D. 1867, to the date of this
writ, was unable to use his said mills, mill-privilege and machin-
ery to any advantage or profit, but wholly lost the same, and was
otherwise greatly injured and damnified."

For several years before 1867 the plaintiff and his sons carried
on the manufacturing business in partnership, though the mills
and machinery were owned by him alone. In the fall of 1867,
they dissolved that copartnership, and the sons hired the mills by
a verbal agreement that they were to have it for five hundred dol-
lars a year rent provided they were not flowed out during the next
spring as they had been the previous one; in which event, no
rent was to be paid. In 1868 the mills were again flowed, and
therefore no rent was paid or demanded, since none was due under
their arrangement.

Besides being flowed out by these freshets, the wheels were
broken some, one corner of one of the two mills settled, and
other damage was done. The plaintiff claimed to recover for
this direct injury to the mill and for the loss of the rents of it.
To settle all questions by one trial the presiding judge refused to
give an instruction requested by the defence, to the effect that
this last item was not recoverable in this action, and directed the
jury, in addition to their general verdict, to find specially what
sum would cover the direct injury to the realty itself, if any were
found to be inflicted upon it by the defendants' acts, and what
would be an equivalent for the lost rent of the mill, at a fair rent-

al. The jury returned a general verdict for $659.27; of which they apportioned, "For damage to mill, $93.24" and "for loss of rent, $566.03." The defendants excepted to the instructions as to rent and to other rulings, and filed a motion for a new trial; but only the question of the right to recover for rent lost is considered in the opinion.

*Baker & Webster* for the defendants.

The defendants' counsel argued elaborately upon their motion to set aside the verdict; and then, in support of their exceptions, contended that the court should have given the requested instruction, "that the plaintiff, under the counts in this writ is not entitled to recover for diminution of rents for his mill and machinery, as he has set out no such cause of action." 1 Chitty on Pleading, 441; Sedgwick on Damages, 575; *Baker* v. *Sanderson*, 3 Pick., 348; *Sumner* v. *Tileston*, 7 Pick., 203; *Parker* v. *Lowell*, 11 Gray, 353; *Baldwin* v. *R. R. Co.*, 4 Gray, 333; *Warner* v. *Bran*, 8 Gray, 400; *Adams* v. *Barry*, 10 Gray, 361; *Buttley* v. *Faulkner*, 3 B. & Ald., 294.

*L. Clay* for the plaintiff, in support of this action, cited R. S., c. 92, § 2; *Thomas* v. *Hill*, 31 Maine, 252; *Wentworth* v. *Poor*, 38 Maine, 243; *Lincoln* v. *Chadbourne*, 56 Maine, 197; *Munroe* v. *Gates*, 48 Maine, 463.

Loss of use, or rent, of the property is properly included. Sedgwick on Damages, 147, note; *Hammat* v. *Russ*, 18 Maine, 171; *White* v. *Moseley*, 8 Pick., 356; *Munroe* v. *Gates*, 48 Maine, 463; *Rockwood* v. *Allen*, 7 Mass., 254.

DICKERSON, J. This is an action on the case to recover damages to the plaintiff's mills and for the interruption of his mill business, alleged to have been caused by the defendants placing flush boards upon their dam on the Cobbosseecontee stream in Gardiner, whereby the water was made to flow back in Purgatory stream in Litchfield, on which the plaintiff's mills and dam are situated. It comes before the court on motion and exceptions.

There are two counts in the writ. The particular injuries caused

by the defendants' erections, as set forth in the first count, are "hindering and obstructing the use of said mills and machinery and rendering the same of little or no value, and subjecting the plaintiff to great loss and expense by the interruption of the business of said mills, and depriving him of the profit thereof." The injuries complained of in the second count are that "the wheels of the mills were hindered and obstructed so that the plaintiff was unable to use his said mills, mill-privilege and machinery to any advantage or profit, but wholly lost the same, and was otherwise greatly injured and damnified."

As the plaintiff was a copartner with his sons during a portion of the time covered by the writ he did not claim, nor was he allowed to receive any damages in consequence of loss of profits or for preventing the use of the mills for that period of time, but was confined to such damages as resulted from direct injuries to the mills and machinery for which the jury returned a special verdict.

During the balance of the time specified in the writ it was in evidence that the sons of the plaintiff operated the mills under a verbal lease to pay a rental of $500, if the mills were not flowed out as they were the previous year; but if they were thus flowed out, they were not to pay any rent. The jury returned a verdict of $566.03 "for loss of rent."

There is no count in the writ alleging damages for loss of rent in express terms, nor for diminution of rent, and the counsel for the defendants requested the presiding justice to instruct the jury that "the plaintiff under the counts in his writ is not entitled to recover for diminution of rents for his mill and machinery, as he had set out no such cause of action therein." This request was denied, and the jury were instructed that the measure of damages would be the difference between the fair rent of the mills with the flush boards on, and the rent without the flush boards.

It is a well established rule in pleading that when special or peculiar damages are claimed, such as are not the usual or natural consequences of the act done, they should be specifically set forth in the declaration, by way of aggravation, that the defendant may

have due notice of the claim. Special damages are those which may be given in evidence to aggravate the damages sued for in an action already pending, or which may be themselves distinct causes of action. *Dickinson* v. *Boyle*, 17 Pick., 78 ; *Smith* v. *Sherman*, 4 Cush., 413.

It was held in *Parker* v. *City of Lowell*, 11 Gray, 358, which was an action of tort for the obstruction of a culvert, that the loss of rents is in the nature of special damages, and is not recoverable unless specifically set forth in the declaration. *Squier* v. *Gould*, 14 Wend., 159 ; *Adams* v. *Barry*, 10 Gray, 361 ; 1 Chitty on Pleading, 441. Sedgwick on Damages, (6th ed.,) 730, 731, 732, and notes.

The jury were instructed that the loss or diminution of rent occasioned by the wrongful acts of the defendants, would be the measure of damages. Our conclusion is that the instructions upon this point are erroneous, and that there is error in the refusal to give the requested instruction in respect to the necessity of a special count for loss or diminution of rent. There is, in truth, no count in the writ to sustain the verdict of the jury "for loss of rent."

Nor is this infirmity cured by the allegation of loss of profits in the first count in the writ. Profits are clearly distinguishable from rents. Both terms are technical in their nature, and neither necessarily includes the other ; there may be profits without rents, and *vice versa*. The other requested instructions were given, and the rulings in respect to the admission and exclusion of evidence appear to be unobjectionable.

There is nothing in the motion that calls upon us to set aside the verdict. The plaintiff is entitled to recover the damages done to the mill and machinery which the jury found to be $93.24. For that sum the plaintiff may have judgment, if he will remit from the verdict all but that amount and interest thereon from the date of the verdict. Otherwise the verdict must be set aside and a new trial granted.                     *Judgment accordingly.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.