SOLOMON MORRISON *vs.* BUCKSPORT & BANGOR RAILROAD COMPANY.

Penobscot.    Decided May 8, 1877.

*Railroad.*

A railroad corporation is not liable for damages in an action by a proprietor, over whose land the road is lawfully located, for an injury to his premises caused by the road-bed preventing the accumulations of surface water from passing where they were accustomed to flow.

The statute which gives a right of action to "those injured" for the neglect of railroad companies to observe the conditions of construction imposed upon them in crossing highways, refers to damages sustained by towns, counties and turnpike corporations and not those suffered by individuals on account of the flow of surface water being obstructed thereby.

ON REPORT.

CASE : For that, whereas, there now is, and for a long time has been, a public highway in the town of Brewer aforesaid, known

and designated as Stone street, and that whereas the county commissioners at, &c., 1873, did, according to the statute provided in such cases, define and say upon what conditions the said Bucksport & Bangor Railroad Company, might lay their track and build a crossing across said street as follows, viz:

"The crossing of Stone street, in Brewer, to be graded twenty-two feet wide, with a true grade from each rail to the surface of the street, sixty feet distant on each side, and planked between the rails; the said Bucksport & Bangor Railroad Company to provide for the drainage of their road at this point, by conveying it within their own limits to the stream."

And, whereas said railroad company, unmindful of said conditions and provisions, have so carelessly and negligently constructed said crossing that the water upon said land instead of flowing in its usual course to the stream, flows under the plaintiff's buildings and into his cellar, causing him great damage and inconvenience thereby.

Also, for that said defendants at said Brewer, on the fourth day of December, 1873, and on various other days and times between that day and the day of the date of this writ, being by law obliged to provide for the drainage of their road at its crossing over Stone street, in Brewer, by conveying the same upon their own lands and within their own limits to the stream, did neglect, and ever since have entirely neglected so to do, and thereby diverted the same on and over the lands of the plaintiff, situate near said street, being the homestead upon which he lives, causing the same to overflow his grounds, fill his cellars under the barn and house thereon, undermine his wall, and otherwise seriously injure the lands, buildings and property of the plaintiff there situate. Yet, &c.

The plaintiff introduced evidence tending to show that he was damaged by surface water, substantially as alleged.

If the action was not sustainable upon the evidence, a nonsuit was to be ordered; otherwise a default.

*L. Barker & L. A. Barker,* for the plaintiff.

The defendants had no right to build their road or run it till

they had first complied with the terms imposed by the commissioners. 45 Maine, 560. 49 Maine, 119, 156.

The obligation to maintain a good and sufficient drain is continuous. 51 Maine, 313. Shear. and Red. on Neg. c. 25, §§ 444 and 449.

The testimony shows that a culvert under the railroad instead of under Stone street would convey the water in its old course. The railroad have not complied with the terms, and a right of action accrues to the plaintiff under R. S., c. 51, § 15.

*F. A. Wilson & C. F. Woodard*, for the defendants.

PETERS, J. It is a fundamental maxim of the law that a man may use his own land, for lawful purposes, as he pleases. He may make erections or excavations thereon to any extent whatever. Within his own limits, he can control not only the face of the earth, but every thing under it and over it. Thereby, the estate of another man may be, in various ways, injuriously affected. Much loss and hardship even might grow out of it. But it is not a legal injury and there is no legal remedy for it. Such results are necessarily incident to the ownership of land. An early case, illustrating the extreme right of land owners in this respect, was *Thurston* v. *Hancock*, 12 Mass. 220, the principle of which has been supported by many subsequent cases. It was there held, that a man might dig down his own land so near the line between him and his neighbor that his neighbor's house would have no sufficient support in its foundations to stand upon; and that the neighbor had no action for the injury to his house, though on that account the house was abandoned and taken down. The very oldest cases are to the same effect.

Among other results from the application of this principle, it is well established that any proprietor of land may control the flow of mere surface water over his own premises, according to his own wants and interests, without obligation to any proprietor either above or below. There may not be an entire coincidence of view in the cases in this country as to the extent of the right of the upper proprietor in this respect, but in all the cases the principle is admitted. He may prevent surface water from coming upon

his land according to its accustomed flow, whether flowing thereon from a highway or any adjoining land. *Bangor* v. *Lansil*, 51 Maine, 521. He may prevent its passing from his land in its natural flow. *Gannon* v. *Hargadon*, 10 Allen, 106. It was said in *Rawstron* v. *Taylor*, 11 Exch. 369, that "one party cannot insist upon another maintaining his field as a mere water table for the other's benefit." He may erect structures upon his own land as high as he pleases without regard to its effect upon surface water, no matter how much others are disturbed by it. *Flagg* v. *Worcester*, 13 Gray, 601. *Bates* v. *Smith*, 100 Mass. 181, 182. And he may dig ever so deep upon his own land for proper purposes, although he thereby deprives his neighbor of the sources of water. *Chase* v. *Silverstone*, 62 Maine, 175. If all this were not so, men could not reconstruct and utilize their landed estates without infinite trouble and suits.

But there must be a boundary to this proprietary right somewhere. Therefore it is, that the principle is limited to the control of surface water and cannot be extended to a water course or brook. A water course cannot be stopped up or diverted to the injury of other proprietors. There is a public or natural easement in such a stream, belonging to all persons whose lands are benefitted by it. The two things, surface water and watercourse, however, are not to be confounded. To constitute a water course, it must appear that the water usually flows in a particular direction; and by a regular channel, having a bed with banks and sides; and (usually) discharging itself into some other body or stream of water. It may sometimes be dry. It need not flow continuously; but it must have a well defined and substantial existence. It is contended in some cases, that there may be an exception to this description of a water course in the case of gorges and narrow passages in hills or mountainous regions. But there is a broad distinction between a stream and brook, constituting a water course, and occasional and temporary outbursts of water occasioned by unusual rains or the melting of snows, flowing over the entire face of a tract of land, and filling up low and marshy places, and running over adjoining lands, and into hollows and ravines which are in ordinary seasons destitute of water and dry. *Luther*

*v. Winnisimmet Co.* 9 Cush. 171. *Ashley* v. *Wolcott*, 11 Cush. 192, 195. *Hoyt* v. *Hudson*, 27 Wis. 656. *Bowlsby* v. *Speer*, 31 N. J. 351. Angell on Watercourse, § 1 *et seq.* Wash. Easements, c. 3, § 1 *et passim.*

Now, the same standard of right, which governs the use that individuals may make of their property, also governs all others. What the man may do, may also be done by the town or county or other corporation. If the individual may dig a ditch or erect a barrier, so may the town or county build up a highway, and a railroad company build a road, without liability for the effect it may have upon the accustomed flow of surface water. Lord Kenyon said (4 Term R. 196,) "if this action (for such an interruption) can be maintained, every turnpike act, paving act, and navigation act, would give rise to an infinity of actions." This position is well supported by the cases. *Whittier* v. *Portland & Kennebec Railroad*, 38 Maine, 26. *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10; and see cases *supra.*

Applying this doctrine to the facts of the case before us, we think the plaintiff cannot recover. The accumulations of water here were caused by the flow down the side of a valley into a slag or depression of land through which the railroad is located, and which (a portion or all) were cut off by the road-bed from passing where they otherwise would go. But there is no marked stream or brook there, and no water there in the way of anybody but at exceptional seasons of the year. The flow complained of, clearly enough, arose from surface water merely. Undoubtedly the plaintiff was injured, by the taking of his land for a railroad, beyond the value of the mere land taken. But the injury to the land left, by the use that was to be made of the land taken, was included in the damages awarded to him; or should have been. They were recoverable in that form. 103 Mass. 10, before cited. *Bangor & Piscataquis Railroad* v. *McComb*, 60 Maine, 290. See 31 Maine, 215.

Nor can the plaintiff recover in this action, by virtue of § 15, c. 51, R. S., which provides that, in case the railroad corporation neglects to do certain acts in relation to crossing highways as required by county commissioners, "those injured may recover

damages in an action of the case." The answer to this claim is, that the plaintiff was not injured ; that is, there was no legal injury. It was *damnum absque injuria.* The defendants were not in fault, so far as the plaintiff was concerned. He must keep the surface water off his premises as best he may. "Those injured", referred to in the statute, are towns, counties, and turnpike corporations. The language of the section in R. S., 1841, (c. 81, § 10) is, "the said turnpike corporation, or the aggrieved town" may recover. Towns have an action for the destruction or obstruction of a road or the conversion of materials belonging to it. *Troy* v. *Cheshire Railroad,* 23 N. H. 83.

                              *Plaintiff nonsuit.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS, and VIRGIN, JJ., concurred.