BRUCE E. PETTENGILL
AND
CLARA R. PETTENGILL

*vs.*

EDWARD J. TURO AND MARY A. TURO

Cumberland. Opinion, August 9, 1963.

*Peter N. Kyros,*
*Philip G. Willard,* for Plaintiff.

*Millard E. Emanuelson,*
*Basil A. Latty,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
SIDDALL, MARDEN, JJ.

MARDEN, J. On objections to admission and exclusion
of evidence, to portions of the jury instructions, to refusal

of the presiding justice to give certain instructions and appeal from denial of defendants' motion for judgment *non obstante veredicto,* and alternate motion for a new trial.

The undisputed facts in brief establish that by warranty deed of August 20, 1959 the plaintiffs purchased from one Doughty real estate adjoining the defendants' property, executing a purchase price first mortgage to a bank. Between the property of the plaintiff and that of the defendant was a driveway owned by the defendant but in which plaintiff had an easement for access to and egress from his property. About October 1959 the defendant raised the grade of the driveway, with insufficient drainage, as a result of which, water was impounded on the rear yard of plaintiffs' property and overflowed plaintiffs' well and sanitary drainage system during fall and winter of 1959. In November 1959 it was determined that the well was polluted and during the winter 1959-1960 plaintiff procured drinking water elsewhere. Plaintiffs executed a second mortgage to Doughty, his vendor, on June 8, 1960. In August of 1960 the defendant further elevated the roadway resulting in additional impoundment of water on the plaintiffs' land, during which season plaintiff added gravel to the affected area to absorb the water, found the well still polluted, had a new well drilled, was deprived of the use of the flooded yard and lost a number of trees. Doughty assigned the second mortgage on plaintiffs' property to the defendant on January 23, 1961. To date of hearing no foreclosure had been instituted by the defendant. On June 2, 1961 was filed this complaint for damages. Defendant seasonably counterclaimed for damage to his driveway, alleging injury by plaintiff or his agents.

In July of 1961 the health officer and selectmen of the Town of Cape Elizabeth were brought into the situation, as a result of which certain recommendations were made

by the Town Manager involving freedom of drainage to be supplied by the defendant and restoration by the plaintiff of the leaching bed connected with his septic tank. Defendant made some changes in the drainage provision under the roadway and plaintiff hauled in sand to "restore" his leaching bed. The flowage continued. On August 23, 1961 plaintiff executed a deed of his property to one Trefethen.

Controversy exists over the extent of the flowage and its effect as applied to the plaintiffs' well and trees. Defendant contends that the participation of Town officials in the controversy resulted in an accord and satisfaction which prohibits the prosecution of this present complaint, that his position as a mortgagee after January 23, 1961 and the conveyance by plaintiff to Trefethen on August 23, 1961 gives plaintiff no standing in court as against him. Plaintiff denies the accord and satisfaction and contends that the deed to Trefethen was an equitable mortgage. The heart of the case is whether or not the impounding of the water by the defendant, by virtue of his elevating the roadway, came about by his impediment only of the natural run-off of surface water, or whether it blocked a watercourse.

The jury returned a verdict for the plaintiff in the amount of $4,000.00 including a special finding of $300.00 for loss of plaintiffs' trees and $1,000.00 punitive damages, and likewise for plaintiff as defendant in the counterclaim.

The objections taken during trial are consolidated in the statement of points on appeal, and we quote:

"1. The Court erred in refusing to dismiss the complaint for failure to state a claim upon which relief can be granted.

"2. The Court erred in refusing to direct a verdict in favor of the Defendants.

"3. The Court erred in allowing testimony of the cost of an artesian well over Defendant's objection.

"4. The Court erred in allowing testimony of the cost of putting in a second leaching bed over Defendant's objection.

"5. The Court erred in allowing testimony of the value of trees over Defendant's objection.

"6. The Court erred in instructing the Jury that the Jury should not be concerned if somebody other than Plaintiffs held a mortgage on this property.

"7. The Court erred in instructing the Jury that as a matter of law there was no evidence of accord and satisfaction in this case.

"8. The Court erred in instructing the Jury that it could award Plaintiff punitive damages.

"9. The Court erred in refusing to grant the following requested instruction: 'I instruct you as a matter of law that Defendants were the owners of the "Pettengill" property, therefore, Plaintiffs cannot recover.'

"10. The Court erred in refusing to grant the following instruction: 'If you find that Plaintiff's suffered damages after January 23, 1961, they cannot recover damages if you find that Defendants were mortgagees from that time on.'

"11. The Court erred in refusing to grant the following requested instruction: 'An accumulation of water is no indication of a water course.'

"12. The Court erred in refusing to grant the following requested instruction: 'Plaintiffs are not entitled to damages for loss of trees.'

"13. The Court erred in refusing to grant the following requested instruction: 'I instruct you

as a matter of law that Plaintiffs are not entitled to punitive damages.'

"14. The Court erred in expressing the opinion that the facts in this case did not fit the definition of accumulation of surface water given in a case cited by the Court to illustrate the difference between water course and surface drainage.

"15. The Court erred in refusing to order judgment for Defendants N. O. V.

"16. The Court erred in refusing to grant a new trial."

The issues will be treated seriatim, combining those which turn upon the same legal question.

No. 1. Error alleged in the court's refusing to dismiss the complaint.

The expression of the complaint is inartistic for it might be interpreted as a complaint for obstruction of a watercourse and in the alternate the obstruction of the natural flow of surface water, one act of the defendant (obstructing a watercourse) actionable, *Card* v. *Nickerson*, 150 Me. 89, 104 A. (2nd) 427, and the other (obstructing flow of surface water) nonactionable, *Morrison* v. *Bucksport & Bangor Railroad Company,* 67 Me. 353, but we find no motion addressed to this pleading and the case was tried, by implied consent of the parties upon the "water course" theory, and under Rule 15 M. R. C. P. there is no error to be attributed to the trial court.

No. 2 and 15. Error alleged in the court's refusing to direct a verdict for the defendant and later to order judgment for the defendants *n.o.v.*

The record supports amply the conclusion that there were jury questions on both liability and damage and there

was no error in the refusal of the presiding justice to neither direct a verdict for the defendants nor order judgment for defendant *n.o.v.*, *McMann* v. *Reliable Furniture Co.*, 153 Me. 383, 385, 140 A. (2nd) 736.

No. 3, 4, 5, and 12. Error alleged in the application of the measure of damages to the artesian well, the leaching bed, and loss of trees.

The jury was justified in finding that the well existing on the premises of the plaintiff at purchase was overflowed by the ponding of the water created by the defendants raising the grade of the road; that the leaching bed serving the septic tank on the plaintiffs' property was inundated; and that the flowage so created by the defendant killed a number of plaintiffs' trees. The measure of damages applied at trial to these injuries was as follows: Leaching bed: Cost of material and labor to restore it. Pollution of well: Cost of drilling new well and connecting it to the house. Trees: Reasonable value.

To all of this evidence defendant seasonably objected.

The facts competently establish a nuisance. *Norcross* v. *Thoms*, 51 Me. 503, 504; *Card, supra*, pp. 91, 96. The cause was abatable. The injuries to the real estate, except to the trees, were temporary. Damages for a continuing nuisance are recoverable to the date of the writ and thereafter may be compensated by successive actions at law, or by seeking abatement in equity. *Caron* v. *Margolin*, 128 Me. 339, 343, 147 A. 419; *Goodwin* v. *The Texas Company*, 134 Me. 266, 268, 185 A. 695.

The rule of damages to be applied to temporary nuisance injury occasioned by water pollution varies considerably among the several jurisdictions. See Annot. 49 A. L. R.

(2nd) 253, Annot. 19 A. L. R. (2nd) 769. We do not find that a composite rule has ever been pronounced in Maine. It is clear that the "before and after" rule applicable to permanent injury does not apply. See *Cumberland and Oxford Corporation* v. *Hitchings,* 65 Me. 140, 142; and *Card, supra.* And, using the cost of restoration as a measure of damage in a case of waste is criticized in *Rockland Water Company* v. *Tillson,* 69 Me. 255, 269, the court there pointing out that "the plaintiff may repair in his own way, and thus make the property very much more or less valuable than it was before, or, if no repairs were made or 'expenses incurred' in consequence to the injury, the damages recoverable would still be the same." The measure of damages to be applied in cases of temporary nuisance injury to real estate, supported by reason and authority, is that the injured land-owner is entitled to be compensated for the depreciation in the rental or useable value of the property caused by the nuisance (here flowage) during the continuance of the injury, together with such special damage (including permanent injury to land) as may be proved. 15 Am. Jur., Damages, § 110; 39 Am. Jur., Nuisances, §§ 134, 136; Annotations in A. L. R. (2nd) *supra; Manning* v. *Woodlawn Cemetery Corporation,* 131 N. E. 287, 288 (Mass. 1921) ; *Albemarle Soapstone Co.* v. *Skipwith,* 211 F. 323, 325 (under headnote 3) (4th Cir. 1913) ; *City of Harrisonville, Mo.* v. *W. S. Dickey Clay Mfg. Co.,* 61 F. (2nd) 210, 212 (under headnote 5) (8th Cir. 1932) ; *Ginther* v. *Long,* 87 So. (2nd) 286, 288 (under headnotes 2, 3) (Miss. 1956) ; *Bartlett* v. *Hume-Sinclair Coal Mining Company,* 351 S. W. (2nd) 214, 217 (under headnotes 3, 4) (Kansas City Court of Appeals 1961) ; *The City of Henryetta* v. *Runyan,* 370 P. (2nd) 565, 566 (under headnotes 3, 4) (Okla. 1962).

This rule has not been repudiated in Maine, *Plimpton* v. *Gardiner,* 64 Me. 360, 365 (matter of pleading), and its acceptability is implied in *Canal Corporation* v. *Hitchings,*

*supra*, p. 142 ("inconvenience suffered") and almost adopted in *Atwood* v. *City of Bangor*, 83 Me. 582, 586, 22 A. 466.

See also Annot. 142 A. L. R. 1307 as to special damage.

It follows that the damages claimed for the flooding of the leaching bed of the septic tank and the pollution of the well must be reconsidered.

The measure of damages for the destruction of trees allows the land owner an election. When the trees have an intrinsic, estimable value other than that which their presence adds to the value of the real estate, "the owner may treat them as personal property, and sue for their value as though they had been detached from the realty, in which case his measure of damages is the value of the trees separate and apart from the soil; but where one sues to recover damages for injury, permanent in nature, caused his land by the loss of the trees, the measure of damages is (the difference between) the market value of the land immediately before and immediately after the injury." *Spear-Vose* v. *Hoffses*, 128 Me. 409, 411, 148 A. 146.

Plaintiff and his original complaint demanded judgment "for lessening the value of the plaintiffs' land * * * which resulted in the killing of trees * * *." In his amended complaint, after alleging the wrongful flowage, he continues "whereby the value of the plaintiffs' real estate was greatly depreciated and the plaintiffs were put to great expense, namely, * * * 'the sum of $300.00 for trees killed.' " Based upon the questions addressed to the plaintiff by his counsel

"Q. Do you know the reasonable value of those trees.
"A. Yes. * * *.

"Q. What is, in your opinion, the value, reasonable value, of those trees.

"A.   $300.00, but they could never be replaced for
        $300.00"

the presiding justice was entitled to understand that the
plaintiff was seeking "reasonable value" for the special
permanent injury which he suffered by way of the nuisance
within the authority of *Spear-Vose, supra,* and the rule
herein confirmed, and as to that there is no error, either in
allowing this testimony as to value or in refusing to grant
the requested instruction prohibiting plaintiff's entitlement
to damages for the trees.

> No. 6, 9, and 10.   Error alleged in instruction
> to jury that the existence of a mortgage upon
> plaintiff's property would not affect his rights to
> prosecute his complaint against defendant, first
> as a third party and subsequent to January 23,
> 1961 as a second mortgagee by assignment.

At common law a mortgage of real estate is regarded as
a conveyance in fee, which title is defeasible by the per-
formance of the mortgage obligation.   Nevertheless, the
mortgagee is not, in a general sense the owner of the mort-
gaged estate before foreclosure.   His interest is not, in fact,
real estate, but he is entitled to have it treated as such so
far as it may be necessary to enable him to protect his se-
curity.   As to the rest of the world, the entire estate is in
the mortgagor.   The freehold remains in him, *Hammatt* v.
*Sawyer,* 12 Me. 424, 427; *Wilkins* v. *French,* 20 Me. 111,
117; and while in possession he may maintain a complaint
for flowage, *Atwood* v. *Pulp and Paper Co.,* 85 Me. 379,
380, 27 A. 259.   Until the mortgagee chooses to take pos-
session, the mortgage gives him no right to do any act
whereby the mortgagor may be disturbed in his enjoyment
of the estate, or its value and earnings may be diminished.
Note: 7 Am. St. Rep. 31, and *Kimball* v. *Lewiston Steam*

*Mill Co.*, 55 Me. 494, 499. And "if before entry the mortgagee * * * causes to be deposited thereon (the mortgaged premises) any substance injurious to the land * * *, the mortgage affords no protection against a claim for damages and he is liable therefor notwithstanding the mortgage." *Morse* v. *Whitcher*, 15 A. 207, 209 (N. H. 1888) ; *Runyan* v. *Mersereau*, 6 Am. Dec. 393 (N. Y. 1878). See also 36 Am. Jur., Mortgages, § 275 and 59 C. J. S., Mortgages, § 195, p. 253.

The conveyance by plaintiff to Trefethen, whether an outright transfer or in equitable mortgage is of no defensive aid to defendant. Plaintiff's cause of complaint had long since arisen and the transfer of the property to Trefethen was not ipso facto an assignment of his right of action. See *Kimball, supra,* p. 499.

> No. 7. Error alleged in jury instruction that there was no accord and satisfaction between these parties as a matter of law.

Defendant urges that a conference held on the premises sometime prior to July 8, 1961 at which the parties, two of the selectmen of the town, the town manager and the town health officer were present, as a result of which conference the town manager dispatched a letter to the parties suggesting a two-part solution wherein defendant was to provide drainage of the water and plaintiff was to restore his leaching bed, followed by conversation between and action by both parties, accomplished an accord and satisfaction barring the prosecution of this complaint. Neither party agrees that the other did what was recommended out of the conference, and the sole evidence supporting the contention that there was an accord and satisfaction is to be found in defendant's guided testimony, as follows:

"Q. Before you put this entire draining system in, did you have a conversation with Mr. Pettengill?

"A. Yes, I know of one, at least.

"Q. Did you have a conversation pertaining to this whole draining system which you were going to put in before you put it in, is that correct?

"A. Yes.

"Q. And you agreed to do certain things, is that correct?

"A. Yes.

"Q. And he agreed to do certain things, is that right?

"A. Yes.

"Q. And that was to rectify the whole situation, settle it all, is that correct?

"A. Obviously, yes.

"Q. Did you do everything that you agreed to do to carry out that understanding you had with Mr. Pettengill?

"A. Yes, sir.

"Q. Did he do everything he agreed to do?

"A. That wouldn't be fair. I am a perfectionist."

It is to be borne in mind that the complaint was filed June 2, 1961 and by August of 1961 after defendant had done what he says he was supposed to do, the flowage had not abated.

Our statutory provision for an accord and satisfaction as expressed in Sec. 64, Chap. 113, R. S., is not here involved.

At common law:

"To constitute an accord and satisfaction, there must be an offer in full satisfaction of the obligation, accompanied by such acts and declarations as amount to a condition that if it is accepted, it is

> to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the conditions imposed. * * * (A)n accord is an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of * * * (a) claim, something other than that which is claimed to be due, and the satisfaction is the * * * performance of the agreement * * * ." 1 Am. Jur. (2nd) Accord and Satisfaction, § 1.

> "The rule is universally recognized that except where the new agreement is itself accepted as a satisfaction, * * * the failure to * * * perform an act required by a new agreement entered into in satisfaction of a * * * claim leaves such agreement a mere executory accord, without satisfaction, and as such, it constitutes no bar to the enforcement of the original claim * * *." 1 Am. Jur. (2nd) *supra,* § 47.

Assuming an accord here, without so finding, it is clear that there was no satisfaction. Removing this issue from jury consideration was not error.

No. 8, and 13. Error is alleged in permitting the jury to consider punitive damage.

As a general rule punitive damages are recoverable in all actions upon tortious acts which involve ingredients of malice, fraud or insult, or wanton and reckless disregard of plaintiffs' rights. Generally such damages may be recovered regardless of whether a cause of action is in trespass or case, 15 Am. Jur., Damages, § 274, and in Nuisances, 39 Am. Jur., Nuisances, § 137. The general rule is followed in Maine, *Goddard* v. *Grand Trunk Railway,* 57 Me. 202, 218; *Wilkinson* v. *Drew,* 75 Me. 360, 362, and specifically for pollution of a well in *Klassen* v. *Central Kansas Co-Operative Creamery Ass'n.,* 165 P. (2nd) 601, 603,

and 608 (under headnote 18) (Kan. 1946). While adjectives characterizing the nature of the act vary in a given case among intentional, willful, malicious, fraudulent, reckless, oppressive, or grossly negligent, the phrase used by the presiding justice in discussing punitive damage with the jury calling for a finding of an act on the part of the defendant of "malice, fraud, gross negligence, or recklessness" has been used in Maine in *Lord* v. *M. C. R. R. Co.,* 105 Me. 255, 258, 74 A. 117, and is accurate. The law of punitive damage was applicable upon appropriate finding by the jury and submission of this question to the jury was proper.

> No. 11.   Error is alleged in the court's refusing to grant an instruction that "an accumulation of water is no indication of a water course."

This instruction was correct in law, but defendant was not entitled to have it given unless the subject matter was not already covered by the charge and the refusal to give it was prejudicial. *Desmond, Pro Ami* v. *Wilson,* 143 Me. 262, 268, 60 A. (2nd) 782. The charge of the presiding justice on the point at which the instruction was aimed was clearly, fairly and fully stated and the absence of this instruction was not prejudicial error.

> No. 14.   Error is alleged in the court's "expressing the opinion that the facts in this case did not fit the definition of accumulation of surface water given in" *Morrison* v. *Bucksport & Bangor Railroad Company,* 67 Me. 353, 356.

In illustrating the difference between a land owner's duty in the handling of surface water as compared to a watercourse, the court read to the jury the reference portion of the *Morrison Case,* and interrupted his reading at

the point where the opinion changes to compare surface water with a watercourse to state: "Then the court goes on to use this language about a situation which does not sound like a description of terrain in this case and I point that out to you because I still think that the language which the court uses will help you in understanding the definition of watercourses. The court goes on to say: 'It is contended in some cases, that there may be an exception to this description of a water course in the case of gorges and narrow passages in hills or mountainous regions.' *You may find that this terrain (in controversy) doesn't sound like mountainous regions* (parenthetical and emphasis added), but the language I am going on to read, I think, may be of help to you."

The court then continued with the quotation from *Morrison* which points out the broad distinction between a watercourse and accumulation of surface water. The comment of the court, if it were an opinion, did not imply that the facts in this case did not fit the definition of an accumulation of surface water, as defendant urges, but that the terrain in this case might not "sound like mountainous regions."

The excerpt from *Morrison* was fully as applicable to the defendants contention in the case as it was to the plaintiffs, and was appropriately used in exposition of the problem to the jury.

No. 16. Error is alleged in the court's refusing to grant a new trial. The grounds for a new trial, seasonably urged upon the presiding justice after verdict, are in substance that the damages were excessive, that the court erred in the admitting and excluding of unidentified evidence and granting and failing to grant unidentified instruc-

tions and that the charge to the jury "failed to cover the law and the facts of the case."

This objection (the claim of error in the trial court's refusing to grant a new trial) is not to be resolved upon excess of damage as such. The record reveals that there was a very understandable uncertainty, — our court having never recorded a rule, as to the measure of damages applicable to a temporary nuisance injury. The plaintiff was allowed to testify, without objection, to the "before and after" value representing depreciation of $4,000.00 in his property taking into consideration the pollution of his well, the loss of use of his yard, the flooding of his cesspool and the loss of his trees, but in due course the jury was instructed to disregard this evidence and the plaintiff later testified to the several items of damage discussed ante, together with a claimed loss of $2,000.00 for deprivation of use of the yard, the total of which, if accepted without reduction by the jury, and without the assessment of punitive damages, was $3,525.00. The defendant offered no evidence challenging the plaintiffs' evaluation of his losses, or suggesting that plaintiff failed to act in mitigation of his damage, if indeed plaintiff had such a duty, upon which point we do not now rule. See 39 Am. Jur., Nuisances, § 138, Harper & James, Torts, § 22.8, Nuisance, p. 1221. The appeal on the ground of excessive damage is denied.

For us to consider alleged but unidentified errors, broadly challenged in point No. 16, our approach is governed by Rules 59 and 73 M. R. C. P. (New Trials and Appeal to the Law Court). Rule 73, as amended, "preserves for review any claim of error in the record" including any claim of error in denying a motion for a new trial under Rule 59. Rule 59 authorizes a new trial "on all or part of the issues for any of the reasons for which new trials have heretofore been granted * * * in the courts of this state," — one such

reason being an error in law on a vital point whereby the verdict must have been based upon a misconception of the law. *Johnson* v. *Parsons,* 153 Me. 103, 111, 135 A. (2nd) 273.

The manner in which the "yard" damage was considered requires review. The plaintiff, without objection, was permitted to express his owner-opinion of the reasonable value of his loss of use of the back yard and thereupon fixed the damage at $2,000.00. The basis of his conclusion was not explored. There is nothing to indicate that it was founded upon anything but arbitrary owner-evaluation in which depreciation in rental or usable value did not enter, and was well calculated to result in unjust assessment. Logically the various elements of temporary damage (here identified with well, leaching bed and yard) might well be reflected in one assessment of the depreciation in rentability or usability of the property as a whole. To do so would minimize risk of unwitting duplicity in damage.

Because the basis of the assessed damage to the yard does not clearly fall within the prescribed rule and the absence of application of such recognized measure, both in presentation of the evidence and in jury consideration, must have led to a verdict based upon misconception of the law, we hold that this damage must be reconsidered.

This ruling is not to be understood as broadening the area in which new trials will be granted. The hitherto unsettled state of the law in Maine as to measure of damages arising out of temporary nuisances leads us to this particular conclusion.

A verdict for the plaintiff was returned in the amount of $4,000.00 including, by special finding, $300.00 for loss of trees and $1,000.00 for punitive damages. The record

does not enable us to determine how the remaining $2,700.00, under this trial procedure, was apportioned among injuries to the well, leaching bed and backyard. We can find no sound basis for ordering a remittitur as an alternative to setting aside the verdict as to these items. The verdict of $1,300.00 identified above will stand. The remainder of the verdict is set aside and the case remanded to the Superior Court for a new trial consistent with this opinion but only upon the question of damages attributable to the well pollution and inundation of the leaching bed and back yard. See *Cosgrove* v. *Fogg, et al.*, 152 Me. 464, 467, 54 A. (2nd) 538.

*Appeal sustained.*

*New trial granted, but limited to the question of damages in accordance with the above.*