### SKIPWITH v. ALBEMARLE SOAPSTONE CO.

(Circuit Court of Appeals, Fourth Circuit. February 10, 1911.)

#### No. 922.

1. NUISANCE (§ 15*)—PRESCRIPTION—DURATION OF USE.

The period of time which will give a prescriptive right upon or over the lands of another cannot begin to run until the exercise of such right becomes adverse to the owner of the land, and the fact that a defendant had for many years discharged stone dust and waste from its soapstone manufactory into the waters of a stream did not give it a right by prescription to do so which precluded an owner of bottom land on the stream several miles below from recovering damages for injury to his land by the deposit of such waste thereon in times of high water, where such injury did not commence until a short time before action

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

brought, and apparently not until the stream had become so filled with the dust and waste that it was stirred up by the flood waters and carried over the land in times of overflow in injurious quantities.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 46; Dec. Dig. § 15.*]

2. LIMITATION OF ACTIONS (§ 55*)—ACCRUAL OF RIGHT OF ACTION—INJURY TO PROPERTY.

An action by a riparian owner on a stream to recover damages for injury to his land by the deposit thereon in times of high water of stone dust and waste discharged into the stream from defendant's soapstone manufactory several miles up the stream is not barred by a five-year statute of limitation because the manufactory was permanent in character and had been built and in operation for more than five years, during which time it had discharged its waste into the stream in the same manner and to the same extent, where the injury to plaintiff's land was not an obvious and necessary result of such operations, and did not commence until within five years before suit, and not until the waste had so accumulated in the stream that it was raised and carried over, and deposited upon, the land in injurious quantity in times of overflow.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 305; Dec. Dig. § 55.*]

In Error to the Circuit Court of the United States for the Western District of Virginia, at Charlottesville.

Action at law by L. Skipwith against the Albemarle Soapstone Company. Judgment for defendant, and plaintiff brings error. Reversed.

This is a civil action of trespass on the case brought by the plaintiff in error, plaintiff below, L. Skipwith, against the Albemarle Soapstone Company, defendant in error, defendant below, a corporation seeking to recover damages for pollution of the waters of a stream, and for injuries to plaintiff's lands lying along the stream. The plaintiff in his declaration alleges that he is owner of a farm situated in Albemarle county, Va., upon which he lives and carries on the business of an agriculturist, and that about 50 or 60 acres of his farm consists of bottom lands located on what is known as "Eppes creek," which is a running stream, and in its natural state was unpolluted and pure, and furnished water for the stock of the plaintiff, and also for agricultural purposes; that at frequent intervals the said stream overflowed its banks and flooded the lands of the plaintiff, and thereby was conducive to the improvement of the bottom lands and benefited them for agricultural and grazing purposes; that the defendant in operating a soapstone mill erected on the waters of the said stream some four or five miles above the lands of the plaintiff had poured and washed into the stream, and at points on its branches, great quantities of soapstone dust and débris, and tailings from quarrying, mining, sawing, and milling soapstone, which substances are sterile and unwholesome; that they polluted the water of the stream, and that the accumulations of soapstone dust, débris, and tailings which had settled in the bottom of the stream and its branches were lifted and churned by the freshets and overflow of the said stream and carried upon the lands of the plaintiff and there deposited, which resulted in injuring the land to the extent that it became unfit for agricultural or grazing purposes, and plaintiff laid his damages at $500 for pollution of the water, and $4,500 for injury to his land. The defendant entered its plea of not guilty, and thereby raised the general issue, and also filed four several special pleas. The plaintiff objected to the filing of pleas 2, 3, and 4, and the objection to No. 3 was sustained, and to 2 and 4 overruled by the court, to which ruling the plaintiff duly excepted. Thus the case stood for trial upon the general plea of not guilty and upon the special pleas. The facts as set out in the special pleas were, in substance, that the defendant was owner in fee simple of a large tract of land in Albemarle county, situated upon the waters of Eppes creek about four miles above the lands of the plaintiff, on

which tract there were valuable deposits of soapstone, and that in 1883, 24 years prior to the bringing of plaintiff's suit, the defendant had constructed and put in operation upon its land a costly, valuable, and permanent mill and manufactory for the quarrying, sawing, working, and milling of soapstone; that the manufactory and mill consisted of extensive buildings and structures and costly machinery and appliances, constructed, erected, and put in operation at a great expense and outlay for the said purposes, and also substantial and permanent in its character, and that more than 20 years had elapsed from the erection and commencement of the operation of the said manufactory before the bringing of plaintiff's suit; that the said manufactory had continued to be operated without interruption from the time of its completion aforesaid, and to the same extent, for more than 20 years; and that the substances complained of were cast into the stream by the defendant through and by means of the said mill, manufactory, machinery, and appliances and continuously in the same manner without interruption, and that the casting of said soapstone, tailings, etc., into the waters of the stream were the necessary result of the operations of the said manufactory. The jury returned a verdict for the defendant, basing it on instruction B given by the court at the instance of plaintiff, as follows: "The court instructs the jury that if they shall believe from the evidence that the amount of soapstone discharged into the stream by the defendant has been materially increased within the five years preceding May 27, 1907, then they may find for the plaintiff and assess his damages at such amount as they shall believe from the evidence he has suffered by reason of such increase, although they may determine that no recovery can be had for damage suffered from that amount which was being discharged on and prior to May 27, 1902." The case comes here by writ of error at the instance of the plaintiff below for review.

H. W. Walsh and Daniel Harmon, for plaintiff in error.

William O. Fife and George Perkins (Moon & Fife and Perkins & Perkins, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL, and BOYD, District Judges.

BOYD, District Judge (after stating the facts as above). The foregoing synopsis of the facts in the case and the pleadings will give a general understanding of the nature of the action. However, a reference to other facts and circumstances involved will be had in the course of our discussion of the points which arise. It may be said in the outset that the three defenses set up by the defendant were first, a plea of not guilty, which, under the Virginia practice in an action of trespass on the case for damages, raises the general issue. The first special plea was that by the uninterrupted use of the waters of Eppes creek for more than 20 years the defendant had acquired a right to such use by prescription, and the other special plea was that the use of the stream in the operation of the mill of the defendant was necessary; that the structure was permanent in its character, and that the waste therefrom had been discharged into the waters of the stream continuously from the time that the operations began, and that, therefore, if the discharge of such waste into the stream was a nuisance, it was a permanent one; that the injury therefrom was direct, immediate, and complete, and that the damages therefor, if any resulted, should have been measured in a single action; and that under the Virginia law the plaintiff was barred to bring his action after the lapse of five years from the time the operation of the mill began.

185 F.—2

We could find no error in this case if the special defenses set up by the defendant were applicable to the facts which are uncontroverted or to the cause of action set forth in plaintiff's declaration alleging injury to his land, for, as relating to the principles involved in the defenses, the law was correctly stated by the learned trial judge. We are of the opinion, however, that to adopt these defenses, or to try the case upon the theory that they, or either one of them, could be sustained as against the plaintiff's alleged injury to his land was error.

We will consider first the question of right by prescription. Had the conclusive presumption of such right in defendant arisen by the lapse of time? Take it to be true that the defendant in the continuous operation of the soapstone mill, which was a permanent structure, had discharged into the upper waters of Eppes creek the dust, tailings, etc., from the mill from the time the operations began in 1883, and that such discharge was necessarily consequent upon such operation, can it be said that the use of the stream for this purpose was adverse to the right of plaintiff, who is a riparian owner four miles below to have his lands lying on the stream protected from injury? Even if the right to dump the waste from the mill into the stream, and thereby pollute its waters and render them unfit for use by owners below had accrued to the defendant by reason of user for this purpose for a sufficient period, we do not think that this carried with it the further right to flood the lands of such owners with extraneous substances which sterilized the soil and injured their value, for it is not suggested that such result was immediate, or that it was in any wise anticipated. In order to give a prescriptive right to the use of the waters of a stream for a particular purpose, or to privileges on or over the lands of another, the use must be adverse for the time prescribed by the local or general law.

When did the use of the waters of the stream by defendant for the discharge of the soapstone waste in operating the mill become adverse to the rights of plaintiff with respect to injury resulting therefrom to his land? It cannot be said that such was adverse to plaintiff in this respect in the outset, because there has been no suggestion that the settlings of soapstone dust discharged into the stream in the operation of the mill were to be lifted by the waters and floated over and deposited upon the lands lying along the banks of the stream. There can be no adverse user until there is at least some evidence of the right or interest to be affected thereby. It follows, then, that whilst the defendant may have acquired a prescriptive right to the use of the stream in the operation of its soapstone manufactory, and to discharge the waste from the mill into the waters which has ripened by length of time into a conclusive presumption of a grant for that purpose, this right is confined to the waters of the stream for that use alone, and cannot be extended so as to cover injuries to adjoining lands which were unknown, and could not have been reasonably anticipated at the commencement of the operation of the structure, and which were not developed until the mill had been in operation for many years.

The title of one person to a right upon or over the lands of another by prescription is derived by purchase, and presupposes, by reason of the lapse of time, that originally the landowner had made a grant for the right claimed, and, as we have said before, the period of time upon which a prescriptive right is based cannot begin to run until the exercise of the right is adverse to the owner whose property is to be affected by it. How, therefore, could a presumption be raised that the owner of the plaintiff's lands had conveyed to defendant the right to injure portions of it lying along Eppes creek by overflowing it with soapstone dust, and thus destroying its fertility more than 20 years before the bringing of plaintiff's suit, when so far as the facts appear in the case there was no such injury to the lands in question, actual or apparent, until very recently before the bringing of plaintiff's suit?

As relating to the defense of prescriptive right set up by the defendant, and at the request of defendant, the court instructed the jury as follows:

"The court instructs the jury that if they believe from the evidence that the defendant has, under a claim of right to do so, used the waters of Eppes creek and of its tributary, Beaver Dam creek, in the manner and to the extent complained of in the declaration for the period of 20 years prior to the 27th day of May, 1907, and that such use of the same by the defendant has been open, exclusive, continuous, and adverse to the plaintiff, or those under whom he claims, for the said period of 20 years, then this affords a conclusive presumption of right in the defendant to use the stream in the manner aforesaid, and the jury must find for the defendant."

Plaintiff's counsel excepted to this instruction, and one of the errors assigned is based thereon. The substance of plaintiff's evidence was, following in line of his declaration, that this dust and waste which was discharged into the waters of the stream in the operation of the mill of the defendant had gradually accumulated in the stream from time to time until eventually, as stated, it had been washed up and churned by the freshets and carried upon plaintiff's bottom land, resulting in the injury thereto complained of. Defendant's testimony was mainly directed to establishing the fact that the discharge of the waste into the stream was a necessary consequence of the operation of the mill, had begun with the completion of the structure, and had continued in practically the same degree from that time, and it was expressly denied by the defendant that the plaintiff's land had been affected as alleged. In view of what we have said, we are of the opinion that this instruction was erroneous, not as a general proposition of law, but as applying to the facts disclosed by the testimony.

We come now to defendant's second special defense, that the injury for which plaintiff seeks damages was such as was necessarily consequent upon, and immediately resulting from the construction, use and operation of its plant, which was permanent, and that the use of the stream for the discharge of its waste was continuous, and that a single action for such damages should have been brought within the limit of five years from the time operations began as prescribed by the Virginia law. What we have said with reference to the use of the stream by the defendant as a means of discharging the waste from its mill, so far as relevant, may be considered here. Permanent

injuries to land such as we are considering are those which are immediate and necessarily result from the operation of or use of a permanent plant or structure, and continue as long as the operation goes on. Damages for such injuries are readily apparent, reasonably certain, and therefore ascertainable in one action, but injury which cannot be anticipated, and which results from happenings which may or may not take place, is not of the permanent character contemplated for recovery in a single action. Such damages in the outset are only speculative or conjectural, and the injuries upon which they are based, if such result, constitute a new cause of action whenever they occur. The defendant, in support of this defense, relies upon the decision of the Court of Appeals of Virginia in the case of Hot Springs Company v. McCray, 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465. In that case the court holds that:

"When, by wrongful acts, a permanent nuisance is created, and the injury therefrom is direct, immediate, and complete, so that the damages can be immediately measured in a single action, the statute of limitations will begin to run from the creation of the nuisance."

We are not at variance with the principle decided in that case, but we are of the opinion that the case here does not come within its purview. The Virginia Court of Appeals in the decision cites Troy v. Cheshire, 23 N. H. 83, 55 Am. Dec. 187, which clearly defines the distinction between a permanent nuisance for which damages may be recovered in a single action and such nuisances or injuries as may in some event result from the same cause, but for which several actions may lie. We quote from that case as follows:

"Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there the damage is an original damage and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong to apply the labor necessary to remove the cause of injury, and can only cause it to be done, if at all, by the expenditure of his own means. But where the continuance of such an act is not necessarily injurious, and where it is necessarily of a permanent character, but may or may not be injurious, or may or may not be continued, there the injury to be compensated in a suit is only the damage that has happened. *Thus, the individual who so manages the water he uses for his mills as to wash away the soil of his neighbor is liable at once for all the injury occasioned by its removal, because it is in its nature a permanent injury;* but, if his works are so constructed that upon the recurrence of a similar freshet the water will probably wash away more of the land, for this there can be no recovery until the damage has actually arisen, because it is yet contingent whether any such damage will ever arise."

The latter clause of this quotation, as we think, is substantially our case. Suppose, in order to present the question plainly, that when the mill was completed and put in operation this plaintiff, or the then owner, had brought his suit for damages to land which was located on the stream four miles below, and declared that the conduct of the business of the mill, and the discharge of its waste into the waters of Eppes creek above, had injured the land by the overflow and the deposit thereby of sterile substances thereon, what would have been the answer to his declaration? Undoubtedly that no damage had resulted to him in that respect, and that there was no reasonable ground

upon which to assume that such would result. There would have been no tangible or definite basis upon which to estimate damages, and his action would therefore have been premature.

The Hot Springs Case is readily distinguishable from the one we have under consideration. In that case the Hot Springs Company constructed a sewer system for use by the hotels and other houses at what is known as Hot Springs, Va. The sewer was so constructed that it emptied into Hot Springs Run, a stream which coursed through plaintiff's land a short distance below the mouth of the sewer. The plaintiff waited until the sewer had been in operation for more than five years, and then brought suit, not for injury to the land, but for damages for the pollution and befouling of the water of the stream so as to render it unfit for use. The Court of Appeals of Virginia said substantially that the sewer was a permanent structure; that the emptying of its contents into the stream was continuous with its use, and therefore it was a permanent injury to the waters of the stream; and that the suit for damages for this cause should have been brought within the five-year limit. There is no analogy between that case and this. The effects of emptying a large sewer into a stream, especially one of small proportions, is a matter of common knowledge, and everybody understands that the waters of a stream become from such use so polluted as to be unfit for many ordinary and necessary purposes. But here, whilst the plaintiff alleged that this soapstone deposit polluted the waters of Eppes creek, his demand for damages is based principally upon the alleged injury to his bottom land, and his allegation, further, is that the injury to his land was caused by the accumulation for years of the waste from the mill in the stream, and that it was lifted by the freshets and left on the land. The following was the instruction to the jury on this point given at the request of defendant:

"If the jury believe from the preponderance of the evidence that the injury complained of in the declaration comes about from the use made by the defendant of its plant, and that such use of said plant necessarily operated to produce the injury complained of, and that said plant is permanent in character, and that the same use, in the same manner and to the same extent that is now complained of was made of said plant more than five years prior to the 27th day of May, 1907, they should find for the defendant."

The court went further to instruct the jury as to what was necessary in order to constitute the plant of defendant a permanent one, but this is not material in our view of the case; our conclusion being that it was error to advise the jury that the principle laid down applied to plaintiff's cause so far as the alleged injury to his land was concerned. It is readily to be observed from the verdict returned what the jury had in mind. As has been stated, the verdict was based on instruction B, which is copied above. This instruction, it is true, was given at the request of plaintiff, but it was no doubt sought by him as a dernier resort after the court had adopted as the law of the case the above instruction requested by the defendant. It is evident that the jury concluded that the plaintiff was not entitled to recover at all unless the discharge from the mill into the waters of the stream had

been increased within five years of the bringing of his suit. We do not regard this as important, because it is our opinion that it made no difference so far as the injury to the lands was concerned whether the quantity of soapstone dust, etc., discharged into the stream had been increased or decreased. Plaintiff's cause of action arose when the injury to his land occurred as a result of the accumulation of these substances in the stream, and not before. So far as the alleged damage to the land was involved, it should have been tried and submitted to the jury upon the issue of fact raised by plaintiff's declaration and defendant's general denial. In other words, we think that the pleas of prescription and the five-year limit should have been overruled, and plaintiff permitted to go to the jury upon the sole question of whether or not his lands had been injured by causes alleged, and, if so injured, to what extent in damages.

Our conclusion, therefore, is that the judgment of the Circuit Court should be reversed and the case remanded, to the end that a new trial may be had in accordance with the views herein expressed.

Reversed.