## ALBEMARLE SOAPSTONE CO. v. SKIPWITH.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1913.)

No. 1163.

1. WATERS AND WATER COURSES (§ 49*)—FLOODING LAND—PERMANENCY OF INJURY.

Where, in trespass to recover damages to plaintiff's land and crops by defendant's deposit of soapstone dust into waters of a creek which by floods and freshets subsequently was carried down and deposited on plaintiff's land, there was no proof of a permanent injury, the rule of damages applicable to a nuisance resulting from a permanent structure or establishment which at once exerts a malefic effect was inapplicable.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

2. WATERS AND WATER COURSES (§ 49*)—INJURIES TO LAND—RIGHT TO SUE.

In an action for injuries to plaintiff's land and crops by the pollution of the waters of a stream with soapstone dust by defendant, which was later thrown on plaintiff's land by floods and freshets, plaintiff's right to recover was limited to the damages for injuries sustained after the time he acquired title to the land.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

3. WATERS AND WATER COURSES (§ 49*) — INJURIES TO LAND — MEASURE OF DAMAGES.

In an action for injuries to plaintiff's land and crops by defendant's pollution of a stream by soapstone dust, which was later thrown onto the land by floods and freshets, the court properly charged that plaintiff's measure ·of damages for injury to the land was the difference between its rental value freed from and subject to or incumbered with the dust so deposited and for the injury ·to any given crop the difference in value of the crop free from and burdened with such deposit.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

4. DAMAGES (§ 217*)—INSTRUCTIONS—DAMAGES.

Where, in an action for injuries to plaintiff's land and crops by deposit of soapstone dust in the waters of a stream which was thereafter carried onto the land by freshets and overflows, the evidence showed that one portion of plaintiff's land was more subject to overflow and consequent deposit of soapstone dust than the remainder, and that the damage to crops was confined to the 'upper bottom, while the damage by loss of the use of the land for purposes other than grazing the wild grass was confined to the lower bottom, an instruction that an upper riparian proprietor had no right to so use the stream as to materially injure the land or crops of the lower owner of the same stream, and if the jury believed from the evidence that defendant had so used the stream in question as to materially injure the land or crops, or both, of plaintiff, the jury should find for him, and assess his damages at such sum as would compensate him for the injury so done, the measure of damages for injury to the land being the difference between the fair rental value thereof, free from and subject to the alleged deposit during the period specified, and the measure of damages for injury, if any, to crops being the difference in the value of the crops free from and subject to the deposit, was not objectionable as authorizing double damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 556–559; Dec. Dig. § 217.*]

In Error to District Court of the United States for the Western District of Virginia, at Charlottesville; Henry Clay McDowell, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by L. Skipwith against the Albemarle Soapstone Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. T. Coleman, of Lynchburg, Va. (Coleman, Easley & Coleman, of Lynchburg, Va., on the brief), for plaintiff in error.

H. W. Walsh and R. T. W. Duke, Jr., both of Charlottesville, Va., for defendant in error.

Before PRITCHARD, Circuit Judge, and KELLER and CONNOR, District Judges.

KELLER, District Judge. This was an action in trespass on the case brought by L. Skipwith against the Albemarle Soapstone Company, a corporation organized under the laws of the state of New York, alleging damages to Skipwith's land occasioned by the depositing by the defendant of soapstone dust in the waters of Eppes creek, which dust was by floods and freshets subsequently carried down and deposited upon the lands of plaintiff below, rendering said lands sterile and infertile, etc.

[1] Upon a former trial of this case a verdict and judgment was rendered in favor of the defendant, which was reversed upon writ of error. See Skipwith v. Albemarle Soapstone Co., 185 Fed. 15, 107 C. C. A. 119. In view of the opinion of this court in that case it will be unnecessary to consider all of the assignments of error embraced in the record as it is evident that many of them are founded upon the theory that the doctrine applicable to the case is that the damage complained of is attributable solely to the erection and operation of permanent structures or establishments which at once exert their malefic effect. That such is *not* the case here was plainly pointed out in the opinion of Judge Boyd in the case upon the former writ of error; and to the views therein expressed we adhere. The claim here is for damage to the land, and this did not arise until soapstone dust and débris became deposited on the plaintiff's land.

[2] The defendant was properly permitted to file its plea of the statute of limitations of five years, and the learned trial judge in instruction D further limited the time within which the injury must have happened to the period between April 7, 1903, and May 27, 1907; it appearing that plaintiff's record title did not accrue until April 7, 1903. This instruction D given by the court below, and made the subject of an exception, is as follows:

"The upper riparian owner has no right to so use a stream of water as to materially injure the land or crops of a lower riparian owner on the same stream. If the jury believe from the preponderance of the evidence that the defendant has, between April 7, 1903, and May 27, 1907, so used the stream in question here as to materially injure the land or crops, or both, of the plaintiff, the jury should find for the plaintiff, and assess his damages at such sum as will compensate him for the injury so done. The measure of damages for the injury to the land, if any, is the difference between the fair rental value of the land free from and subject to the alleged deposit of soapstone dust during the period aforesaid. The measure of damages for injury, if any, to plaintiff's crops during the aforesaid period is the difference in the value between such crops free from and subject to the alleged deposit of soapstone dust thereon. In no event will the jury assess any damages for mere loss of the use of the water."

[3] This instruction told the jury that they could give no damages on account of the only feature wherein the declaration counted, on' what may be termed a "permanent" injury, namely, the pollution of the water, and confined the recovery to injury occurring to the plaintiff's lands and crops within the period from ·April 7, 1903 (when plaintiff took title), to May 27, 1907. The court properly instructed the jury that the measure of damages to the lands was the difference between their rental value free from and subject to or incumbered with the soapstone dust deposited on them; that as to any given crop as to which evidence of injury by· deposit of such soapstone dust appeared, the measure of damages would be the difference in value between the crop free from and burdened with such deposit. We think, in view of the evidence given, that this instruction was not only without fault, but that it was eminently proper.

[4] The evidence disclosed that one portion of plaintiff's lands was more subject to overflow and consequent deposit of soapstone dust than the remainder. As pointed out by the learned trial judge in his opinion entering judgment on the verdict of the jury, "the evidence of 'damage to crops was confined to the *upper bottom*, while evidence of damage by loss of the use of the land for purposes other than grazing the wild grass was confined to the *lower bottom*," and we fully agree with his conclusion that, read in the light of the evidence, the instruction D, given by the court could not have been misunderstood by the jury, or have been regarded by that body as authorizing *double damages* upon any feature arising in the case. We therefore hold that the third and fourth exceptions of the defendant, covering assignments Nos. 3, 4, 5, and 6 are without merit.

Assignments Nos. 1, 2, and 7 are more general in their nature, the first two being based on the refusal of the court to direct a verdict for the defendant, and the last on the refusal to set aside the verdict and grant the defendant a new trial, and embrace the doctrine, disapproved by this court, that the occasion of the injury to the plaintiff was one to which the pleas of prescription and of the five year statute of limitation applied, as being the immediate and inevitable result of a permanent structure. See the very instructive case of Mast v. Sapp, 140 N. C. 537, 53 S. E. 350, 5 L. R. A. (N. S.) 379, 111 Am. St. Rep. 864, 6 Ann. Cas. 384. And see, also, the very full discussion of the whole subject in Sutherland on Damages (3d Ed.) § 1037 et seq., where the doctrine in relation to the class of cases in which injuries are regarded as permanent, and may or must be sued for once for all and the class in which no suit can be brought until the actual injury to complainant arises is fully set out and illustrated by cases from many jurisdictions.

We are fully persuaded that the former decision of this court in this case was correct, and that the District Court for the Western District of Virginia in retrying the case committed no error.

It results that the judgment is in all respects affirmed.

Affirmed.