## JOANNA S. JUNKINS, *Adm'x*, *vs.* JOSEPH S. SIMPSON.

Where one exchanges a chattel, previously mortgaged by him, without disclosing the existence of the mortgage, the other party has a right to regard it as fraudulent. Such contract is not absolutely void, but voidable only at the election of the party defrauded.

The party having such election must rescind the contract wholly, or in no part; he cannot consider it void to reclaim his property, and at the same time in force for the purpose of recovering damages.

EXCEPTIONS from the Court of Common Pleas, *Whitman C. J.* presiding.

*Replevin* for a yoke of oxen. It was proved, that about the first of *June*, 1835, *Elias Junkins*, the plaintiff's intestate, then living,

and who died the sixth of *September*, 1835, exchanged oxen with the defendant, and paid him ten dollars on the exchange. That after the death of the intestate, *Sept. 17th*, *Edward Simpson, jr.* notified the defendant, that he had a bill of sale of said oxen to secure the payment of fourteen dollars, and unless the same was paid, he should consider the oxen accountable; that the defendant, upon becoming satisfied such was the fact, *Sept.* 19, drove back the oxen he had in exchange, and left them with the plaintiff, who lived on the farm upon which the intestate resided at the time of the exchange, and claimed the oxen which he gave the intestate in exchange, and took them and drove them away, and claimed to hold the same ; and it is for driving away and detaining these last mentioned cattle, that this action is brought.

The plaintiff had not, at that time, taken out administration upon the estate of her husband and refused to receive back the oxen, which were her husband's before the exchange, or to pay or extinguish the claim of said *Edward Simpson, jr.* on said oxen, or deliver up the oxen which were the defendant's before the exchange, or to do any thing tending to annul the original bargain of exchange, or to consider it as void. There was also evidence tending to prove, that the defendant had not worked the oxen, which he received in exchange, during the season, but that they had been kept in a good pasture, and had increased in value, and that the oxen he gave in exchange had been worked by the intestate, so that, if there was a difference of ten dollars at the time of the exchange, each pair was about equal in value on the said 19th of *September*. The Judge ruled and instructed the jury, that the defendant had no right, in the manner aforesaid, to treat the bargain of exchange as a nullity, or to consider it as void ; even if the said *Edward Simpson, jr.* had a paramount title to the oxen, delivered to the defendant by the intestate in exchange ; and if the same were delivered without the defendant's having any knowledge of such paramount title, or incumbrance upon the oxen, that his only remedy would be an action for damages, on the express or implied warranty, after having surrendered the oxen to such title, or after having paid, or extinguished, said incumbrance. The verdict was for the plaintiff, and the defendant filed exceptions.

*D. Goodenow,* for the defendant, contended, that he had a right to rescind the contract, and that this right was legally exercised in this case. The law implies a warranty, on a sale or exchange of property. As *Simpson* owned the oxen put to the defendant, he had a right to return them, and rescind the bargain. Fraudulent representations vitiate all contracts; and the withholding the knowledge of the transaction with *E. Simpson, jr.* by *Junkins,* was, in itself, a fraud on the defendant. 4 *Mass. R.* 488; 13 *Mass. R.* 139; 15 *Mass. R.* 319; 12 *Pick.* 312; 3 *Wend.* 236; 6 *Johns. R.* 110; 7 *Johns. R.* 324.

There was no necessity to return the $10. He might retain this sum as an indemnity for the injury to his oxen. He could not return it, because there was no one to receive it, *Junkins* having deceased, and no administration having been taken out.

*Hayes,* for the plaintiff, contended:

1. If the vendor would rescind a contract of sale of goods, and reclaim them, on account of fraud in the vendee, it must appear, that deceptive assertions or false representations were fraudulently made to induce him to part with his goods. 1 *Greenl.* 376; 4 *Greenl.* 306; 4 *Dane,* 474.

2. Where there is no fraud, and the purchaser has not been evicted, the contract cannot be rescinded, but the party is remitted to his remedies at law. 2 *Kent,* 471.

3. If one would avoid a sale or exchange of a chattel for fraud practised by the other party to the contract, he must not retain any part of the consideration received upon the sale or exchange. 4 *Mass. R.* 502; 1 *Dane,* 634.

4. If a contract be rescinded at all, it must be rescinded *in toto.* 12 *Wheat.* 183; 5 *East,* 449; 2 *Kent,* 480; 4 *Dane,* 471.

5. The sale by *Junkins* to *E. Simpson, jr.* was void, as against the defendant, as *Junkins* retained the possession, and the defendant had no notice of the sale. 13 *Mass. R.* 87; 8 *Mass. R.* 287.

6. The claim by *Simpson* was a mere claim for a small sum, and this incumbrance would not authorize a rescinding of the contract.

7. When goods are sold to two different persons by conveyances equally valid, he who first lawfully acquires the possession will

hold them against the other, so that the defendant had a good title against *Simpson, jr.* 17 *Mass. R.* 110; 12 *Mass. R.* 54.

The opinion of the Court was drawn up, and delivered on the circuit at *Oxford,* by

SHEPLEY J. — The facts in this case are presented in the bill of exceptions to the instructions given to the jury in the Court of Common Pleas. The first inquiry is, whether there was such a fraud practised by the plaintiff's intestate upon the defendant, in the exchange of the oxen, as to vacate the contract. It is insisted by the counsel for the defendant, that the contract was wholly void by reason of such fraud. Truth and good faith are certainly required by the law in the dealings between man and man ; and these forbid, that a party should make a false representation knowingly, or that he should conceal material facts exclusively within his own knowledge. But where the facts are alike known to both parties, or where by a proper diligence they might be alike known to both, there being no false representation, the common law leaves the rights of the parties to be settled by the terms of the contract between them.

Different Courts have employed different language to express nearly the same legal principles. *Parsons C. J.* says, " not only good morals, but the common law requires good faith, and that every man in his contracts should act with common honesty, without over-reaching his neighbor by false allegations, or fraudulent concealments." 4 *Mass. R.* 488, *Bliss et al.* v. *Thompson.* It has been decided, that " a sale by sample is tantamount to an express warranty that the sample is a true representative of the kind." 13 *Mass. R.* 139, *Bradford* v. *Manly.*

The question arose soon after the close of the last war, whether a party, who had obtained information, that a peace had been concluded, was obliged to make known such information to one ignorant of the fact, before he concluded a bargain ; and *Marshall C. J.,* in delivering the opinion of the Court, says, where the means of intelligence of extrinsic circumstances are equally accessible to both parties, one party having superior knowledge, is not obliged to make it known to the other, but he must take care not to say or do any thing, to impose upon the other. 2 *Wheat. R.* 178, *Laid-*

*law* v. *Organ.* " A vender has not a legal right to rescind a contract of sale and reclaim the goods sold, unless such fraud was practised in making the contract, that if the vender did not rescind it, he could recover damages against the vendee for the injury sustained by that fraud." 1 *Greenl.* 376, *Cross et al.* v. *Peters.* It appears, that before the intestate exchanged oxen, he had made a bill of sale of them to a third person to secure to him the payment of a sum of money due to him ; and it does not appear, that the defendant, at the time, knew of the existence of such a contract, or that he had any opportunity to have become acquainted with it. It was exclusively within the knowledge of one party, being his own act, and he did not make it known ; and for this reason the contract on his part must be regarded as fraudulent.

If other authorities were necessary,. it would seem, that the case cited at the bar, of the sale of a slave, who was soon to be entitled to his freedom, which fact was known to the vender and not to the purchaser, would be a case in point. 7 *Johns. R.* 324.

But the counsel for the plaintiff resists this conclusion, alleging, that it does not appear, that such third person ever took delivery of the oxen before the exchange, and that as the oxen were delivered to the defendant upon the exchange, his title would prevail in preference to the first sale. It might well be so, were it not, that it also appears in the case, that the sale to the third person was not absolute, but only to secure the payment of fourteen dollars ; and in such cases it has been held, that it is not necessary, that possession should accompany the deed, if the sale were proved to be *bona fide.* 5 *Greenl.* 96, *Reed* v. *Jewett ;* 8 *Greenl.* 326, *Ulmer* v. *Hills.*

And as fraud cannot be presumed, there is nothing in the case to authorize the conclusion, that the first sale, for security, was not a valid one.

But although the exchange must be regarded as fraudulent on the part of the intestate, it does not follow, that the defendant should reclaim the oxen, which he parted with in exchange. That would depend upon the course, which he chose to pursue with regard to the contract. He had a right to avoid the contract for such fraud, by repudiating the whole, not a part of the bargain ; or he might, at his election, regard the bargain as still binding on the

Junkins *v.* Simpson.

other party, and claim his damages for the fraud. He could not repudiate it in part, and still claim damages for the fraud, and constitute himself the judge of the amount of damages, and retain a portion of the property in payment. The contract was voidable at his election, not absolutely void.

Mr. Justice *Washington,* after examining several cases, states the result to be " if upon a sale with a warranty, or if by the special terms of the contract, the vendee is at liberty to return the article sold ; an offer to return it is equivalent to an offer accepted by the vendor ; and in that case, the contract is rescinded and at an end. But if the sale be absolute, and there be no subsequent agreement or consent of the vendor to take back the article, the contract remains open ; and the vendee is put to his action upon the warranty, unless it be proved, that the vendor knew of the unsoundness of the article, and the vendee tendered a return of it within a reasonable time." *Thornton* v. *Wynn,* 12 *Wheat.* 183.

The principle is stated by *Shaw C. J.* in *Rowley* v. *Bigelow,* 12 *Pick.* 307, wherein he says, " being tainted by fraud, as between the immediate parties, the sale was voidable, and the vendors might avoid it, and reclaim their property. But it depended upon them to avoid it or not at their election. They might treat the sale as a nullity, and reclaim their goods, or affirm it and claim the price." *Mellen C. J.,* in *Seaver* v. *Dingley,* 4 *Greenl.* 306, says, " a fraudulent sale is voidable ; it changes no property, if the vendor, on discovery and proof of the fraud, rescinds the contract, or treats it as a nullity. The defendant, when the exchange took place, received ten dollars from the intestate, as the difference of value between the oxen. This money he neither returned, nor offered to return, but claims to hold it, because the oxen, which he received, had increased in value by good usage, while those, which he delivered in exchange, had been hardly worked. And his counsel urges the necessity of permitting him to do it, to avoid circuity of action. But the law does not allow a party to rescind a contract, and at the same time make use of it as subsisting for the purpose of claiming damages.

The law, as stated by *Parsons C. J.* in 4 *Mass. R.* 502, *Kimball* v. *Cunningham,* clearly exhibits the rights and duties of the parties : " when a horse is sold upon an implied warranty that he is

sound, and at the time of the sale the vendor knows that he is not sound, this is such a fraud in him as will render the contract void at the election of the vendee." But he ought not to retain any part of the consideration he received upon the sale or exchange; as, if in exchange, he received money in boot, he ought to return not only the unsound horse, but also the money he received. For he shall not compel even the fraudulent seller to an action to recover back the property he parted with in the exchange. And *Lord Ellenborough C. J.,* in 5 *East's Rep.* 449, *Hunt* v. *Silk,* states, that when a contract is to be rescinded at all, it must be rescinded *in toto,* and the parties put in *statu quo.*

It has not been necessary to consider the effect of the offer to return the oxen, received by the defendant to the plaintiff before letters of administration were taken out, nor whether a tender of the money to her, would, or would not have been good, she being in charge of the property, because the defendant claimed to retain it, which he had no right to do, if he elected to rescind the contract. And as he did not rescind the contract wholly, he did not obtain a legal title to the oxen replevied. The exceptions are overruled, and judgment is to be entered upon the verdict.