George E. SLATTERY, Jr.,
Plaintiff, Appellant,

v.

L. William BOWER,
Defendant, Appellee.

No. 90–1157.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1990.

Decided Jan. 11, 1991.

As Amended on Denial of
Rehearing Feb. 7, 1991.

Richard J. Shea with whom George F. Mahoney, Boston, Mass., was on brief, for plaintiff, appellant.

David P. Rosenblatt with whom Gary W. Smith and Burns & Levinson, Boston, Mass., were on brief, for defendant, appellee.

Before TORRUELLA and CYR, Circuit Judges, and RE,[*] Judge.

RE, Chief Judge:

In this action between the two shareholders of a closely held corporation for damages for the breach of a fiduciary duty, plaintiff-appellant, George E. Slattery, Jr., appeals from a decision of the United States District Court for the District of Massachusetts, which granted defendant-appellee L. William Bower's motion for summary judgment.

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

On appeal, Slattery, the minority shareholder, contends that the affidavits and depositions contained in the record present genuine issues of material fact which, if resolved in favor of Slattery, would allow the jury to find that Slattery is entitled to damages from Bower, the majority shareholder, for Bower's breach of his fiduciary duty owed to Slattery.

The question presented on this appeal is whether the district court erred in concluding that there are no genuine issues of material fact and, as a matter of law, that Bower did not breach any fiduciary duty owed to Slattery.

Since the district court erred in finding that there are no genuine issues of material fact as to whether Bower breached a fiduciary duty owed to Slattery, we reverse and remand.

## BACKGROUND

L. William Bower, a citizen of Maine, became acquainted with George E. Slattery, Jr., a citizen of Massachusetts, in 1976. At this time, Bower was an employee of the National Fishermen's Exposition, a corporation which managed and operated exhibitions of merchandise for the seafood industry. Slattery was an employee of Win–Deco, a company which assisted in the organization of exhibitions managed and operated by the National Fishermen's Exposition.

In 1981, Bower and Slattery formed a partnership which was known as Ridgewood Computer Services. In his deposition, Slattery stated that Bower "asked me if I'd be interested in going into a partnership with him." Slattery explained that Bower "said he needed $12,000 to get it started and I gave him the $12,000.... My role was just to contribute the cash. He was going to do all the work, the sales, all the leg work to get out there and get our customers." Slattery also stated that Ridgewood offered computer services for sale, and that he had no expertise in this area.

In 1983, Bower obtained a controlling interest in Denex International (USA), Inc. Denex was a Maine corporation which or-ganized and managed a trade show known as the Boston Seafood Show. The Boston Seafood Show exhibited merchandise for the seafood industry. It is undisputed that Bower served as the manager of Denex, and had full responsibility for the operations of the corporation.

Slattery, in his deposition, stated that, sometime after Bower obtained a controlling interest in Denex, Bower "called me one evening and told me that Ridgewood was no longer in existence, it was now part of Denex, Boston Seafood Show." Slattery added that he understood Bower to mean that Ridgewood would cease to exist as a separate entity, and that Ridgewood "was going to be just part of the Seafood Show, to do the work for the Seafood Show and for Denex."

In 1983, Bower asked Slattery for a loan to Denex. Slattery refused, but agreed to purchase stock in Denex. Thereafter, Slattery and Bower agreed that Slattery, who was not reimbursed his $12,000 contribution to Ridgewood, would pay an additional $20,000 to Denex in return for 49% of the shares of the Denex corporation. Slattery stated that it was his understanding that he "would not be assigned any duties other than being a 49 percent stockholder...."

Slattery stated that he paid the $20,000 to Denex, and that subsequently, on several occasions, he requested from Bower both stock certificates and financial statements of Denex. In October, 1984, after Slattery had still not received any stock certificates or financial statements, Slattery and Bower met. Slattery stated that he was "very concerned" and "nervous" that he might not receive any return on his investments. He stated that at the meeting he asked Bower the value of the Boston Seafood Show, and Bower replied that he had "no idea," and would "have to research it." Slattery also stated that he:

asked [Bower] what the Seafood Show was worth, and [Bower] told me that he had absolutely no idea what it was worth. I said, "Well, I want to sell out. I want to get out of this thing. Will you give me exactly what I put into it, that

being $32,000?" And [Bower said] "Yes," he was very eager to do it.

In early 1985, Slattery received a check from Bower for $32,000.

In May, 1986, Denex was sold to the National Fishermen's Exposition, Inc., for $1,200,000. The $1,200,000 price consisted of $650,000 for the business good will of Denex, and $550,000 for the customer lists.

On June 1, 1987, Slattery brought suit against Bower, in the state courts of Massachusetts, for damages caused by Bower's breach of his fiduciary duty. On the basis of diversity of citizenship, Bower removed the case to the United States District Court for the District of Massachusetts.

Bower moved for summary judgment. In support of his motion, Bower asserted that he had "simply accepted Slattery's offer to return the money Slattery had invested in Denex." *Slattery v. Bower*, No. 88–0693, slip op. at 5 (D.Mass. Dec. 19, 1989). Bower contended that Slattery was "a 'nervous' investor 'who, fearful that his investment in a marginal enterprise was at risk asked for and received the return of his money.'" *Id.*

The district court noted that under Maine law, the specific fiduciary duty "most applicable to this case is that which concerns disclosure or withholding of relevant information." *Id.* at 9. Based on its interpretation of Maine law and of secondary sources, the court concluded that "a corporate officer breaches his fiduciary duty of disclosure by intentionally or recklessly misrepresenting or omitting a material fact." *Id.* at 12.

The court noted that Slattery had not provided any "direct evidence" showing that Bower knew the value of Denex stock but intentionally or negligently failed to inform Slattery. *See id.* at 13. The court also stated that even assuming that Bower was aware of an increase in receipts for the Boston Seafood Show, "it does not follow that Bower therefore knew the value of Denex stock was increasing and, thus, failed to disclose material information to Slattery." *Id.* The court reasoned that "Denex's worth, as measured by its sale ... in 1986, was derived entirely from its

assets—business good will and customer lists [,] [and] the value of these assets reflects their worth when being sold, not when they were part of a going concern." *Id.* at 14.

In granting Bower's motion for summary judgment, the court stated that "[e]qually important as Slattery's failure to provide specific evidence tending to establish that Bower knew the true value of the show is [Slattery's] own behavior in precipitating the sale of his stock." *Id.* at 15. The court noted that Slattery sold his stock in Denex without reviewing any financial statements, and without obtaining legal or financial counselling. *See id.*

Hence, the district court held that there were no questions of material fact as to whether Bower had breached a fiduciary duty owed to Slattery, and granted Bower's motion for summary judgment.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As stated by the Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

We have noted that "[i]n assessing whether a dispute is material, the district court must look to the substantive law of the case, for '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). Our review of a district court's order granting summary judgment is plenary. *See Mack*

*v. Great Atl. and Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). We must view all reasonable inferences in the light most favorable to the party opposing the motion, and "we must reverse if we find that issues of fact which were adequately raised below need to be resolved before the related legal issues can be decided." *Id. See also Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 598 (D.C.Cir.1988), *cert. denied*, 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989).

Hence, our inquiry in this case is whether the affidavits and depositions contained in the record raise any questions of material fact which, if resolved by a jury in favor of Slattery, would be sufficient to establish Slattery's claim for breach of fiduciary duty under the governing substantive law.

In diversity cases, a federal court must apply the conflicts of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Under Massachusetts law, any question pertaining to the duty owed by the director of a corporation is governed by the law of the state of incorporation. *See Beacon Wool Corp. v. Johnson*, 331 Mass. 274, 279, 119 N.E.2d 195, 198 (1954). *See also* Restatement (Second) of Conflict of Laws § 309 (1971). Hence, in this case, we will apply the substantive law of Maine.

In Maine, the leading case on the fiduciary duty of shareholders or directors of a close corporation is *Rosenthal v. Rosenthal*, 543 A.2d 348 (Me.1988). In *Rosenthal*, the plaintiff, a director of a family owned corporation, sued his brother and his sister-in-law, who were co-directors of the corporation, for breach of fiduciary duty, among other claims. After a jury trial, the court entered judgment in favor of the plaintiff on the breach of fiduciary duty claim. *See id.* at 350.

On appeal, the Supreme Judicial Court of Maine reversed the verdict on the breach of fiduciary duty claim on the grounds that the trial court had erroneously instructed the jury. The court, however, set forth certain fiduciary duties that "business associates" owe to one another:

(1) To act with that degree of diligence, care and skill which ordinarily prudent persons would exercise under similar circumstances in like positions;

(2) To discharge the duties affecting their relationship in good faith with a view to furthering the interests of one another as to the matters within the scope of the relationship;

(3) To disclose and not withhold from one another relevant information affecting the status and affairs of the relationship;

(4) To not use their position, influence or knowledge respecting the affairs and organization that are subject to the relationship to gain any special privilege or advantage over the other person or persons involved in the relationship.

*Id.* at 352.

It is also relevant to note that section 716 of title 13–A of the Maine Revised Statutes provides that:

The directors and officers of a corporation shall exercise their powers and discharge their duties in good faith with a view to the interests of the corporation and of the shareholders and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions....

Me.Rev.Stat.Ann. tit. 13–A, § 716 (Supp. 1990).

The affidavits and depositions contained in the record in this case provide evidence that Bower, who served as the manager of Denex, failed to supply Slattery with any financial statements or other pertinent information about Denex. There is also evidence that, at their meeting in 1984, Bower told Slattery that he was not aware of the value of the Boston Seafood Show, and that Bower quickly agreed to return Slattery's investment. It is not disputed that, within less than two years after reimbursing Slattery $32,000 for his 49% interest in Denex, Denex was sold for $1,200,000.

The affidavits and depositions submitted in this case clearly raise issues of fact which, if resolved in favor of Slattery, would allow a jury to conclude that Bower

had breached a duty owed to Slattery by withholding from Slattery relevant information on the value of Denex, and using his position as manager of Denex to gain a "privilege or advantage" over Slattery. *Rosenthal,* 543 A.2d at 352. There is also evidence that, at the meeting in October, 1984, Bower denied knowledge of the value of the Boston Seafood Show and stated that he would "have to research it." Under Maine law, however, the director of a corporation has the duty to know the financial standing of the corporation, and "cannot set up his ignorance to defend himself from the consequences of his own dereliction of duty." *Folsom v. Smith,* 113 Me. 83, 89, 92 A. 1003, 1006 (1915).

Bower contends that he cannot be held liable for breach of a fiduciary duty to Slattery since "[a]t no time did Slattery make any effort to research Denex'[s] value, and he did not consult either a lawyer or business advisor in connection with the repayment transaction." As noted by the Supreme Judicial Court of Maine, however, the "broad principle" of fiduciary duty "takes on meaning and significance only in a particularized factual context." *Atlantic Acoustical & Insulation Co. v. Moreira,* 348 A.2d 263, 267 (Me.1975). Hence, Slattery's claim for breach of a fiduciary duty must be reviewed in the context of the record, and the relationship between the parties.

The record reveals that Bower solicited Slattery's $12,000 contribution to Ridgewood. Similarly, after obtaining a controlling interest in Denex, Bower again solicited money from Slattery. The record also discloses that Bower had full control over the operations of Ridgewood. In addition, Bower, who had prior experience with exhibitions of merchandise for the seafood industry, had full control over the operations of Denex. Despite several requests from Slattery for information, Bower neglected to provide Slattery with any financial information on Denex.

It is clear, therefore, that this is not a case involving shareholders having equal control or equal access to company information. Instead, the affidavits and deposi-

tions present sufficient evidence for a jury to find that the parties were not dealing at arm's length, and that Slattery relied on Bower's superior knowledge of the business. Thus, our decision in this case is also supported by general concepts of law applicable to persons in a fiduciary capacity. The words of Justice Cardozo, writing as Chief Judge of the New York Court of Appeals, are particularly applicable:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary duties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (citation omitted). *See also SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 194, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963) ("Courts have imposed on a fiduciary an affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts,' as well as an affirmative obligation 'to employ reasonable care to avoid misleading' [persons to whom the fiduciary duty is owed]." (footnotes omitted)).

Hence, the affidavits and depositions contained in the record present questions of fact which, if resolved in favor of Slattery, establish that, under Maine law, Bower has breached a fiduciary duty owed to Slattery. Accordingly, the district court erred in granting Bower's motion for summary judgment.

## CONCLUSION

Since the district court erred in finding no genuine issue of material fact as to

whether Bower breached a fiduciary duty owed to Slattery and that Bower was entitled to judgment as a matter of law, the judgment of the district court is reversed, and the case is remanded.